## DUGGINS VS. WATSON ET AL.

If instructions asked by either party be refused, and he excepts, it devolves upon him to set forth, in his exception, all or so much of the evidence with reference to which it may have been asked, as will present the question of law designed to be made; else the appellate court would have to presume in favor of the judgment that the instruction was properly refused: unless the instruction contradicts or is inconsistent with the pleadings.

Where an instruction is given, purporting to be predicated upon the evidence, as that certain facts shall have been proven to the satisfaction of the jury, the appellate court ought to presume in favor of the court below, that such evidence, not set out in the bill of exceptions, had been adduced.

Where one steamboat is sunk by collision with another, and she contributes to such collision by her own carelessness or unskilful management, or the collision was the result of inevitable accident, and not occasioned by negligence or want of skill on the part of either boat, the owners of the other boat would not be responsible for any damage sustained by the sunken boat.

The shipper of goods on such boat, lost by the collision, is bound by the same principles of law as would be applicable to an action, by the owners of the sunken boat, for the injury done to her, and could recover in such case only as they would be entitled to recover.

But if the collision was produced by the wilful act of the officers and agents of the other boat, then engaged in the service of the owners, though without orders or against orders, the owners would be liable to the freighter for any injury to his property.

*Error to Independence Circuit Court.*

Hon. B. H. NEELY, Circuit Judge.

FAIRCHILD, for the plaintiff. No matter how much to blame the Cate Joyeuse might be, Duggins had a right to sue the defendants, if the Talma was in the wrong, as the injured party may sue one, some or all joint wrong doers. 1 *Ch. Pl.* (7 *Am. Ed.*) 91; *Marsh vs. Williams*, 1 *How.* (*Miss.*) 138; *Bishop vs. Ely*, 9 *J. R.* 294; *Goodrich vs. Rogers & Strader*, 5 *West. Law Journal* 20.

Because the plaintiff was a shipper and passenger on the Cate Joyeuse, to say that he cannot recover without the Cate Joyeuse could, is certainly giving greater liability to his position than his contract. (*Goodrich vs. Rogers & Strader, ub. sup.*) If such was the law, a passenger could not recover of a boat or railroad, for he would be identified with it. *Philadelphia & Reading R. R. Co. vs. Derby*, 14 *How.* 462.

The defendants are liable civilly for the consequences of the wrongful acts of their servants. 1 *Ch. Pl.* (7 *Am. Ed.*) 92; *Bussey vs. Donaldson*, 4 *Dall.* 207; 6 *Cow.* 192; *Goodrich vs. Rogers & Strader, sup.*; 14 *How.* 486.

This Court will presume that the instructions were made upon facts applicable to the law of the instructions; and whether they be law, is the only question.

BYERS & PATTERSON, contra. All legal presumptions must be indulged in support of the judgment and instructions of the Court: and this Court must presume that the instructions were correctly given, if there could be such a case made by the evidence as would support them; as the evidence upon which they were based, is not before the Court.

Mr. Chief Justice WATKINS delivered the opinion of the Court.

The plaintiff in error sued the defendants in an action on the case, to recover damages for the loss of some beef-cattle, belonging to him, and which had been shipped on board the Cate Joyeuse, bound for New Orleans. The declaration alleges that the Cate Joyeuse, descending the Mississippi river, met with the steamboat Talma, of which the defendants were the owners, and that, by the negligence and mismanagement of the officers, who had charge of the Talma for the defendants, she ran into and sunk the Cate Joyeuse, whereby the plaintiff's cattle were drowned and lost to him. The case being tried before a jury, on the plea of not guilty, the plaintiff excepted to three of the instructions given by the Court, at the request of the defendants,

which are as follows : " 5th. If the Cate Joyeuse contributed to the accident or collision by her own carelessness or unskilful management, the defendants are not liable." " 6th. The plaintiff being a passenger and shipper on the Cate Joyeuse, he is bound by the same principles of law as would the boat be, were she plaintiff in the action." "7th. If the collision was produced by the wilful act of the officers and agents of the Talma, the defendants are not liable. If the collision was the result of inevitable accident, and not produced by negligence, or want of skill, on the part of either boat, the plaintiff cannot recover, but must bear the loss himself."

The bill of exceptions taken by the plaintiff, does not set out any of the evidence adduced at the trial, nor is it made to appear upon the record, by agreement of the parties or otherwise, what the facts of the case were, or which the evidence may have conduced to prove ; and it is therefore contended for the defendants in error, that no questions are presented for the consideration of this Court. The salutary rule of law is, that every judgment of a Court of competent jurisdiction is presumed to be correct, unless the party complaining that it is erroneous will make it appear by his exception, or in some other appropriate mode upon the record, wherein the alleged error consists. Hence, if instructions asked for by either party be refused, and judgment go against the party dissatified with the refusal, it devolves upon him to set forth in his exception all, or so much of the evidence, with reference to which it may have been asked, as will present the question of law designed to be made. . Else the appellate court would have to presume, in favor of the judgment, that the instruction was properly refused, because there may have been no evidence upon which to predicate it. (*Collins vs. Fowler*, 2 *Ark.* 143; *Mason vs. McCampbell, Ib.* 506.) And the like result would take place where it could be inferred that the same charge in substance may have been given in other instructions. But where an instruction is given, which contradicts, or is inconsistent with the pleadings, if excepted to, the error may be apparent without

any reference to the evidence, as in *Danley vs. Edwards*, 1 *Ark.* 446, where an instruction given on behalf of the plaintiffs below exempted them from proving a material averment in their replication. Where an instruction is given, purporting to be predicated upon the evidence, and upon the hypothesis that certain facts shall have been proven to the satisfaction of the jury, the appellate court ought to presume, in favor of the court below, that such evidence, though not set out in the bill of exceptions, had been adduced; certainly it does not lie in the mouth of a party obtaining an instruction, the correctness of which is called in question, to argue that there may have been no evidence upon which to base it, but he is estopped from doing so, by his position and the undue advantage gained by the instruction, supposing it to be erroneous. In such case, if the instruction objected to be the only error complained of, no obligation devolves upon the party excepting to set out the evidence; on the contrary, it would only be a useless incumbrance of the record, if the instruction states clearly a proposition of law applicable to the case, and leaves it to the jury to say whether the evidence brings it within the principle asserted. (*Pennock and Sellers vs. Dialogue*, 2 *Peters* 15.) As there said, "the only question, then, is, whether the charge of the Court was correct in point of law." And so we doubt not, that if a party asks and obtains an abstract instruction, that is, one which enunciates a naked legal proposition not connected with any supposed state of case, according as the jury may find it, proved or not proved, or one which assumes the existence of the facts upon which it is predicated, thereby depriving the jury of their right to make the application of the evidence to the law given them in charge, he does so at his peril, and the law would presume that the opposite party, standing upon his legal exception to such a proceeding, has been injured by it. The enforcement of such a rule would discourage the practice of moving for a series of instructions, framed so as to meet every opposite, and, therefore, improbable state of case, that may be made by the evidence. In almost every case where the pleadings tend

16BB

to single and direct issues, the drift of the evidence, however tedious or contradictory, is to establish or repel the existence of a few prominent facts, and which are to be decisive of it according as the Court may charge the jury what the law is arising upon them.   Thus, in the case now under consideration, we have, out of respect to the Court below, and the defendants in error, who moved for the instructions, to presume that there was evidence conducing to prove three inconsistent conclusions of fact supposed by them: 1st. That the Cate Joyeuse contributed to the collision; 2d. That it was occasioned by the wilful act of the officers of the Talma; and, 3d, That it was the result of inevitable accident.   Where the instruction excepted to is abstract, or assumes facts, or, upon the facts supposed by it, is bad law, or is not applicable to the nature of the action, the error is as fully open to revision in the appellate court without the evidence, as if the instruction be one which contradicts the pleadings.   But if the objection be that there has been no evidence adduced, to which an instruction given can apply, the party excepting, in order to overcome the presumption indulged in favor of the Court below, must set out the evidence, which, if it conduce, though in a slight degree, to prove the hypothesis, which, as a fact, the jury might possibly find, and which it was, therefore, proper to submit to them, and then the instruction, if not objectionable in point of law, will be sustained ; but if there be no evidence on which to base it, the giving of the instruction, though good law, will be erroneous.   (*Pogue vs. Joyner*, 2 *Eng.* 468; *State Bank vs. Williams*, 1 *Ib.* 162.)   A practice has grown up for the Court to instruct the jury, at the instance of the defendant, to find, as in case of non-suit, or that the plaintiff has failed to make out his case in evidence, (*Hill vs. Rucker*, 14 *Ark.*,) an anomalous substitute for the peremptory non-suit, as well as a demurrer to evidence, neither turning the plaintiff out of Court against his will, nor taking the case from the jury, as upon a formal demurrer to evidence.   If such an instruction be given, the plaintiff, preferring to have the benefit of the most favorable construction

that can be put upon the evidence in his favor, rather than to suffer a voluntary non-suit, may except to it and thereby elect to be concluded by the verdict, though in doing so he is required to set out all the evidence. And it is to be understood that these observations are not designed to extend to cases, where the unsuccessful party chooses to move for a new trial, and in which, according to the practice sustained by the repeated decisions of this Court, it would be the most prudent course, if not indispensable, for him to set out all the evidence.

Presuming, therefore, that the Court below would not have given the instructions complained of, unless there had been some competent evidence at the trial upon which to predicate them, it results of necessity that their correctness in point of law will have to be determined.

The plaintiff sued as a shipper on the Cate Joyeuse, and, considering the 5th and 6th instructions, and the latter clause of the 7th together, the Court below may be understood as charging the jury, that if they believed the Cate Joyeuse contributed to the collision by her own carelessness, or unskilful management, or that it was the result of inevitable accident, and not occasioned by negligence or want of skill on the part of either boat, the owners of the Talma would not be liable for any damage sustained by the Cate Joyeuse, and that the plaintiff is bound by the same principles of law, as would be applicable to an action by the owners of the Cate Joyeuse for the injury done to her. No fault is to be found with the tenor of this instruction. However equitable the course of decision in admiralty, which would apportion the damages, as between the vessels and the freighters or insurers of cargo in board, arising from collision, when occasioned by mutual fault or neglect, or was the result of inevitable accident, without fault on either side, may seem to be, and whatever conclusion might be proper, if the maritime law extended over the waters of the Mississippi, with courts competent to adjudicate the whole subject matter, to investigate and adjust the divers interests of all the parties interested, it seems to be well

settled that, in a common law action, a Court, proceeding according to the course of the common law, cannot exercise such powers, and the rule is, that if collisions happen, on land or on water, from unavoidable accident, as between the two vessels, or vehicles, each one injured must bear its own loss; and the rule is the same where the collision is occasioned by the mutual fault of both; not indeed that the plaintiff complaining of the injury must have been wholly free from blame, because, though in some degree in fault, or negligent, as for example by being in a wrong position, that will not excuse the defendant if there be a want of ordinary care, on his part, to avoid a collision, much less can he take advantage of it as a license to commit a wanton aggression. In such case, the injured vessel, though in fault, is not considered as having contributed to the collision. But we are not to presume that there was any evidence in the cause to render such a qualification necessary, and, according to the terms of the instruction, the Cate Joyeuse must have contributed by her own carelessness or unskilful management. Presuming in favor of the Court below, that there was no evidence conducing to show that it was in the power of the Talma to have kept clear of the Cate Joyeuse, there can be no reason to doubt the correctness of the general proposition asserted by the instruction—a number of the authorities in support of which, are collected in *Broadwell vs. Swigart*, 7 *B. Mon.* 39. Conceding that if, as between the two vessels, the Talma had been the one in fault, so that her owners would have been liable to those of the Cate Joyeuse, they would also be liable to the plaintiff in this action, yet the law seems to be that for an injury done to freight by a collision, the owner of it must share the fate of the vessel, on board of which his goods are shipped, and cannot recover unless upon the same state of case as proved, her owners would be entitled to recover. The vessel upon which his goods are shipped may be liable to him, as well for a tort by which they are injured, as upon the contract of affreightment, and we may suppose that, for an injury done, by collision, to person or property, disconnected from either boat,

where both are in fault, there might be redress for the tort by action against any of the owners of both or either of the boats; but the owner of goods, entrusted to a carrier, and who is for that employment regarded as his servant or agent, cannot, according to the common law, which admits of no enquiry as to the degree of fault, and makes no provision for apportionment of damages or contribution among tort feasors, hold another liable for the whole damage resulting from an injury, to which he, or his own bailee, may have contributed or aggravated, and consequently can have no recovery at all. In *Vanderplank vs. Miller*, 1 *Mood. & Mal.* 169, Lord Tenderden, without hesitation, declared that such was the law; and in *Sampson vs. Hand*, 6 *Wharton* 311, a case altogether analagous to the present one, Chief Justice Gibson illustrated the rule, not without reason and sustained by authority, though he admitted the argument against it seemed plausible. The only case cited for the plaintiff here, asserting a different doctrine, is that of *Goodrich vs. Rogers and Strader*, 5 *West. Law Jour.* 20, in one of the courts of common pleas of Ohio, which may have been acquiesced in by the eminent counsel engaged, as we do not find any subsequent trace of it in the Ohio Reports. That was an action, for an injury to his person, by a passenger on one of two colliding boats, both of which he alleged to be in fault, against the owners of the two boats, joined as defendants. The presiding judge properly charged the jury that, as against the owners of the boat on which he was a passenger, his right to recover did not depend upon the breach of any contract to transport him, but also asserted the questionable proposition, that, "If the act was caused by the negligence of both pilots, both owners are liable, and each is liable for the whole damage." Possibly this may be the law, applicable to a passenger; because having volition and the power, whether from wilfulness or ignorance, of placing himself in the way of danger, there ought not to be the same measure of accountability for his safety as there would be for the carriage of passive or inanimate freight, wholly under the control of the carrier; and this might

have the effect to enlarge the recourse of the passenger, as one occupying an independent position, against all persons contributing to the injury. But freight is committed to the carrier as bailee. True, the freighter, or all the freighters of goods, on a vessel, have no control over the officers in charge of her, any more than they would have over the owner of the vessel or vehicle were he managing it in person. Neither does the sole charterer of a ship; the owner of which, in either case, if he retains the control, undertakes that he, or the substitutes appointed by him, will be trustworthy and competent to navigate her properly. Hence, the maxim of *respondeat superior*, does not apply to the freighter for the misconduct of those having command of the vessel, yet the carrier, being responsible for the safe carriage of freight, and held to a strict accountability, has a duty to perform about it, a right of action respecting it, and, to that extent, as against third persons, takes the place of the owner, who, if engaged in the transportation of his own goods, could not recover for an injury occasioned by his own fault.

The Court also charged the jury, that if the collision was produced by the wilful act of the officers and agents of the Talma, her owners are not liable. We understand it to be implied in the terms of this instruction, that the officers of the Talma, at the time of the collision, were engaged in the service of the defendants; being in charge of the boat, and navigating it, the presumption would be, that they were employed about the business of the owners, and acting within the scope of their authority. Obviously the fact, to which it directed the enquiry of the jury, was whether the trespass was wilfully committed by the officers of the Talma, and not whether they were at the time exercising an independent employment. In a variety of cases, according to their peculiar circumstances, it may be difficult, in view of adjudged cases, to say whether the servant or agent was or was not acting in the employ of the principal, and the determination of it has often been swayed either way by the apparent hardship of the particular case. But, conceding the premises laid down in

this instruction, the only safe rule of law is, that the master is liable for the tortious act of his servant, engaged in his employment, though done wilfully, without orders, or even against orders.   If the servant's disobedience of instructions will exonerate the master, the proof, easily made, virtually does away with the maxim of *respondeat superior*, designed for the protection of innocent third persons, and obliging the principal to be careful in the employment of agents, to whom he entrusts the means of committing an injury.   In the case cited of *Philadelphia and Reading R. R. Co. vs. Derby*, 14 *Howard* 468, Mr. Justice GRIER, delivering the opinion of the Court, urges another consideration, equally applicable to the management of steam power on water as on land, and to all officers, though having different duties, engaged in its management.   He says: "The entrusting such a powerful and dangerous engine as a locomotive to one who will not submit to control and render implicit obedience to orders, is, itself, an act of negligence, the *causa causans* of the mischief; while the proximate cause, or the *ipsa negligentia*, which produces it, may truly be said, in most cases, to be the disobedience of orders by the servant so entrusted."

For the error in giving so much of the 7th instruction, the judgment is reversed, and the cause remanded, to be further proceeded in according to law, and not inconsistent with this opinion.