MOFFIT *v.* WHITE SEWING MACHINE CO.

1. PRINCIPAL AND AGENT—LIABILITY OF PRINCIPAL FOR TORT OF AGENT—SCOPE OF AUTHORITY.

> In an action for personal injuries caused by an assault upon plaintiff by 'defendant's agent when he called to collect installment payments due on a sewing machine sold by defendant to plaintiff, if, as plaintiff claims, the assault was committed in an attempt to coerce, and to compel payment, to accomplish the instructions of defendant to collect, it would be within the scope of the collector's employment, and defendant would be liable, but if the misconduct was the independent action of the collector, resulting from a personal quarrel, defendant would not be liable.

2. SAME—EVIDENCE—SUFFICIENCY.

> Evidence as to defendant's liability, *held,* to raise a question of fact which was properly submitted to the jury.

3. SAME—NEW TRIAL—EXCESSIVE VERDICT—GREAT WEIGHT OF EVIDENCE.

> A verdict of $750 for plaintiff, *held,* not so excessive or so against the great weight of the evidence as to require a new trial.

Error to Kent; Perkins (Willis B.), J. Submitted April 27, 1921. (Docket No. 20.) Decided June 6, 1921.

Case by Freeman Moffit against the White Sewing Machine Company and another for personal injuries. Judgment for plaintiff. Defendant company brings error. Affirmed.

*Willis B. Perkins, Jr.,* for appellant.

*Fred P. Geib,* for appellee.

CLARK, J. The plaintiff was assaulted by defend-

---

The question as to whether assault growing out of quarrel commenced while employee is acting within the scope of his employment may be regarded as a personal act of the employee for which the employer is not liable, see note in 9 L. R. A. (N. S.) 475.

On liability of master for assault by servant sent to recover property, see note in 6 L. R. A. (N. S.) 567.

On liability of master for assault by servant or agent in collecting debts, see note in 51 L. R. A. (N. S.) 920.

ant Barnhilse, a collector for defendant, the White Sewing Machine Company. The trouble arose during one of the visits of Barnhilse at plaintiff's home to collect installments due on a contract of purchase of a sewing machine by plaintiff from the defendant company. One Geldhof was the company's manager for the district in which Barnhilse was employed and in which plaintiff resided. Both manager and collector, after several efforts, had not succeeded in collecting past due installments from plaintiff, due, as plaintiff claims, to the fact that he was then unemployed. Finally, the manager called at plaintiff's home and said, according to the testimony of plaintiff's wife:

" 'My collector was down there and got one of his "stalls" again, these stalls won't work on us, we have to have the money. Now,' he says, 'your husband doesn't intend to pay his bills and he can't put those stalls over on me at all.' He said, 'He has got to come across with the money,' he says 'he is nothing but a black crook, he is worse than nothing.' He said, 'Now remember, Mrs. Moffit, I know a lot of people around the Square and these individuals have relatives and I am going to make you a lot of trouble, no matter what it costs me, whether it is one thousand or five, I have the money to back it, in fact,' he says, 'the company is paying me a handsome salary; if you are a mind to put it that way to get the money, and that is what I am here for. Now,' he says, 'I will give you until tomorrow morning at ten o'clock to come down and pay me that money or I will garnishee you for every cent you are worth.' He says, 'The only way to get out of it is to pay for the machine.'

"I didn't say much of anything. I said, 'I don't like all this trouble and you might better take the machine.' He said, 'No, I could take the machine if I felt like it and sell it again for as much as we sold it to you, but I am not going to do it, you are going to pay for the machine.' He said, 'The way you people treat me you don't intend to pay me but I am going to show you that you are going to pay for it.' "

214—Mich.—32.

She also testified:

"The next thing that happened, Mr. Barnhilse came up on Saturday, the time of the quarrel, about six-thirty or seven o'clock in the evening; we were getting ready to go down town.   *   *   *   My husband went to the door and Barnhilse said, 'What are you going to do?'   He said, 'I ain't going to do nothing, take the machine, I have taken all the dirt I want from you people, take the machine, that is all there is going to be to it.'   Barnhilse says, 'I am not going to take the machine, I am after the money,' and one word led to another, lots of things said.   One said he was going to take the machine and the other fellow said he wasn't until my husband stepped out of the door.   I spoke up and said, 'Don't quarrel, take the machine and save all this trouble.'   Mr. Barnhilse said, 'Shut up, I am not dealing with you, I am dealing with Mr. Moffit.'   I said, 'I am the one who has taken all the dirt, the one who has had to use the machine and I think I can go without it, and you better take it and save all trouble.'   I says, 'You better go downstairs and save all trouble.'   He said, 'I dare you to come out and put me out and I double dare you.'   *   *   *

"I kept still then, I thought I would let the men folks fight it out.   The next thing I saw, or heard, was my husband stepped outside the door and he tried to talk to him and tell him if he couldn't wait to take the machine, and the next thing I knew why, he began to use vile language; Barnhilse did.   *   *   *   He said, 'I came here to get the money or to take it out of your damned hide.'   *   *   *

"When my husband opened the door Mr. Barnhilse said, 'What are you going to do about this?'   There was a screen on the door.   My husband opened it and stepped outside and talked with Mr. Barnhilse.   He was out in the hall in front of the door.   My husband said, 'I ain't going to do anything, you are going to take the machine back, I have took enough of your dirt, you can have it.'

"Q. Do you know what he meant by that?

"A. He meant he had taken enough of their slang and all this kind of thing.   And just before that, Geldhof had been up there; the reason he got mad

and told Barnhilse this was because Mr. Geldhof had been up there and abused me two or three days before that.

"*Q.* He hadn't abused you two or three days before that?

"*A.* Geldhof had."

She testified further to the use of vile epithets and that Barnhilse on that occasion said, "Don't try to pull anything over on me," "I came here to get the money," "I am going to have the money," and again of threats to get the money or take it "out of his hide," and that "He (plaintiff) didn't get a chance to say any more before he hit him." Plaintiff, claiming damages resulting from the assault, had verdict and judgment against both defendants for $750. The defendant company has brought the case here by writ of error. Appellant contends that it was error to refuse to direct a verdict in its favor as requested, on the ground that the wrong was the wilful and independent misconduct of its agent, the collector. The plaintiff claims that the tort was in course of the employment, to further the collection of money the duty of the collector, to coerce and to compel payment, to carry out and accomplish the instructions to collect. These claims of the parties were submitted to the jury in a careful and comprehensive charge. Upon the facts as claimed by plaintiff a verdict in his favor may be sustained under the holdings in *Zart* v. *Machine Co.,* 162 Mich. 387, and *Canton* v. *Grinnell,* 138 Mich. 590. In the case of *Davidson* v. *Restaurant Co.,* 201 Mich. 389 (L. R. A. 1918E, 704), the assault upon plaintiff by defendant's servant was his own wilful and independent wrong and not of his employment for which his master was not liable, and *Ducre* v. *Lumber Co.,* 168 Mich. 49 (47 L. R. A. [N. S.] 959), cited by counsel, may likewise be distinguished, and in that case the cases of *Zart* v. *Machine Co., supra,*

and *Canton* v. *Grinnell, supra,* are distinguished and other cases cited. See *Cook* v. *Railroad Co.,* 189 Mich. 456. See, also, 14 L. R. A. 737; 6 L. R. A. (N. S.) 567; 9 L. R. A. (N. S.) 475; 12 L. R. A. (N. S.) 1155. And see 26 Cyc. p. 1539, and cases cited in the foot notes.

In the case at bar, if, as appellant claims, the assault was the independent misconduct of the collector resulting from a personal quarrel, the company would not be liable. But if, as plaintiff claims, the assault was to coerce and to compel payment, to accomplish the instructions to collect, it would be within the scope of the collector's employment and appellant would be liable. See, *Bergman* v. *Hendrickson,* 106 Wis. 434 (82 N. W. 304, 80 Am. St. Rep. 47). As to appellant's liability the evidence adduced by plaintiff made a question of fact for the jury.

It is said that the denial of a motion for a new trial on the ground that the verdict is excessive and against the great weight of the evidence is erroneous. A reading of the record satisfies us that the trial court is clearly right in such denial.

We find no other meritorious question for discussion and no reversible error.

Judgment affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.