LOUIS SON *vs.* THE HARTFORD ICE CREAM COMPANY.

First Judicial District, Hartford, May Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

In applying the principle of *respondeat superior* to the liability of a master for the tortious acts of his servant, there is no logical basis for a distinction between those acts which are merely negligent and those which are wanton or wilful. In either case the *test is whether* the servant was engaged in the execution of his master's business and was acting within the scope of his employment.

The master's assent to, or approval of, the servant's conduct is no longer an essential element of his liability, for it is now well established that if the wrongful act bears the requisite relation to the purpose of the employment, the fact that it is wholly unauthorized, or even forbidden, will not relieve the master of responsibility.

In the present case, the defendant's truckman, employed to deliver ice-cream to its customers, was instructed to collect the price

but, in no case, to use force in so doing and to call the defendant's office in case of a dispute. On the day in question, the plaintiff, a storekeeper, refused to receive and pay for the ice-cream on the ground that it was not properly iced. The truckman insisted upon leaving it and attempted to take the price out of the plaintiff's cash register, which the plaintiff prevented by locking the cash drawer. The truckman then undertook to remove the register bodily and in the ensuing struggle for its possession, the plaintiff was kicked and severely beaten. *Held* that the defendant was liable for the injuries suffered by the plaintiff, since the series of events, precipitated by the attempt to collect the money, constituted one continuous transaction, throughout which the truckman was endeavoring to perform the defendant's business.

Argued May 7th—decided June 30th, 1925.

ACTION to recover damages for a battery alleged to have been committed upon the person of the plaintiff by the defendant's servant while engaged in the defendant's business and acting within the scope of his employment, brought to the Superior Court in Hartford County and tried to the court, *Jennings, J.;* judgment rendered for the plaintiff for $2,000, and appeal by the defendant. *No error.*

*William E. Egan,* for the appellant (defendant).

*Jacob Schwolsky,* for the appellee (plaintiff).

BEACH, J. The defendant is a manufacturer of ice-cream. Plaintiff, a shopkeeper, had for some time been receiving ice-cream delivered by defendant's truck driver, whose instructions were to collect the price on delivery. On the date in question, the plaintiff refused to receive the ice-cream, claiming that it was not properly iced. Defendant's servant insisted on leaving it, and when plaintiff refused to pay for it, undertook to take the price out of plaintiff's cash register. Plaintiff succeeded in locking the cash drawer of the register, and defendant's servant then

attempted to carry away the cash register bodily. This led to a struggle for its possession, in the course of which the plaintiff was kicked and severely beaten by defendant's truck driver and his helper. Defendant's instructions to this and other drivers were to use no force in making collections, but in case of dispute to call defendant's office.

The sole question on this appeal is whether, on the facts found, the defendant is liable in damages for the injuries thus inflicted on the plaintiff; defendant's claim being that, especially in view of the driver's disobedience of the defendant's order not to use violence, the assault was not an act done in the execution of the defendant's business and that it was not an act within the scope of the servant's employment.

The liability of a master to answer in damages for the consequences of his servant's torts may rest on one of three grounds, stated as follows in *Stone* v. *Hills,* 45 Conn. 44, 47: "The rule is that for all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is done, the master is responsible."

The earlier cases, including our own, held that a master was not liable for the wilful torts of his servants without proof of the master's assent or approval, on the ground that it would not be presumed without such proof that the commission of a wilful tort was an act done within the scope of the servant's employment. *McManus* v. *Crickett,* 1 East, 106; *Wright* v. *Wilcox,* 19 Wend. (N. Y.) 343; *Church* v. *Mansfield,* 20 Conn. 284; *Thames Steamboat Co.* v. *Housatonic R. Co.,* 24

Conn. 40; *Crocker* v. *New London, W. & P. R. Co.,* 24 Conn. 249.

On the other hand, it now seems plain enough that the liability of a master for his servant's torts is quite independent of the master's assent to or approval of the tortious act; and also that the rule of *respondeat superior* is not explicable upon any theory which does not make it applicable to a wilful as well as to a negligent tort. It may be more difficult for a plaintiff to sustain the burden of proving that a wilful, as distinguished from a negligent, injury was inflicted while the servant was upon the master's business and acting within the scope of his employment; but when these conditions are shown to exist, there is no satisfactory reason for holding a master, who is himself free from fault, liable for his servant's lapses of judgment and attention, which does not also apply to the servant's lapses of temper and self-control.

Accordingly, the well-settled modern rule is that stated in *Mott* v. *Consumers Ice Co.,* 73 N. Y. 543, 547, "that for the acts of the servant, within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interest, the master will be responsible, whether the act be done negligently, wantonly, or even wilfully." See also Huffcut on Agency, § 252; 26 Cyc. p. 1528; 18 R. C. L. p. 807; 51 L. R. A. (N. S.) 920 note; 15 2d Dec. Dig. § 302, pp. 1713, 1714.

In the following cases cited on plaintiff's brief, the defendants were held liable in damages for assaults committed by servants: *Gerstein* v. *C. F. Adams Co.,* 169 Wis. 504, 173 N. W. 209; *Moffit* v. *White Sewing Mach. Co.,* 214 Mich. 496, 183 N. W. 198; *Birmingham Macaroni Co.* v. *Tadrick,* 205 Ala. 540, 88 So. 858; *Zart* v. *Singer Sewing Mach. Co.,* 162 Mich. 387, 127

N. W. 272; *Sturgis* v. *Kansas City Ry. Co.* (Mo.) 228 S. W. 861, 863; *Baylis* v. *Schwalbach Cycle Co.*, 38 N. Y. St. Rep. 492; *Bergman* v. *Hendrickson,* 106 Wis. 434, 82 N. W. 304; *Levi* v. *Brooks,* 121 Mass. 501.

Our own decisions have kept pace with this development of the law. The rule quoted from *Stone* v. *Hills* applies to "all acts done by a servant . . . in the execution of the master's business, within the scope of his employment."

In *Murray* v. *Lehigh Valley R. Co.*, 66 Conn. 512, 34 Atl. 506, defendant was held liable for a wilful tort, and MR. JUSTICE BALDWIN (dissenting, p. 524) points out that the decision conflicts with the doctrine of the earlier Connecticut decisions; though it does not expressly overrule them. In *Turner* v. *American Dist. Tel. & Mess. Co.*, 94 Conn. 707, 110 Atl. 540, the defendant escaped liability for a wilful assault solely on the ground that the assault was committed in the course of a personal quarrel between the plaintiff and defendant's servant, arising after the latter had finished the business entrusted him by the defendant.

The defendant does not deny that a master may be liable for the wilful torts of his servant, but insists that in the case at bar the circumstances show that the defendant's servant was not, at the time of the assault, engaged in the defendant's business, and was not acting within the scope of his employment. In determining that question, "the test is to be found in the nature of the tortious act and its relation or nonrelation to that which the actor was employed to do." *Turner* v. *American Dist. Tel. & Mess. Co., supra,* p. 713. When the servant is doing or attempting to do the very thing which he was directed to do, the master is liable, though the servant's method of doing it be wholly unauthorized or forbidden. "If the servant's disobedience of instructions will exonerate the master,

the proof, easily made, virtually does away with the maxim of *respondeat superior."* *Duggins* v. *Watson,* 15 Ark. 118, 127. "That the servant disobeyed the orders of the master is never a sufficient defense. It must be shown further that he ceased to act for the master and in the course of his employment." Huffcut on Agency, p. 307.

Here the defendant's servant was instructed to collect for goods delivered, and the assault complained of grew out of his attempt to enforce payment by helping himself out of the plaintiff's cash register. What followed was a direct consequence of the servant's tortious method of performing the duty delegated to him. In *Sturgis* v. *Kansas City Rys. Co.* (Mo.) 228 S. W. 861, 864, it was said: "Each act in this transaction, from the seizing of the plaintiff clear on through to the sending of him to the station, followed quick and fast after each other, and the two men [servants] were in charge of him all the time, at least up to the arrest, and it constituted one continuous transaction, and the beating occurred in the course of their performance of the master's work of expediting traffic and of preventing interference therewith, as well as accidents from such interference."

So in the case at bar, the truck driver's attempt to collect out of the plaintiff's cash register precipitated a series of acts constituting one continuous transaction, and the beating occurred in the course of the servant's attempt to perform the business of the master.

There is no error.

In this opinion the other judges concurred.