## TONY BISCONTI *v.* THE PUBLIC UTILITIES COMMISSION.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued October 8—decided November 6, 1940.

*Stanley D. Fisher,* for the appellant (plaintiff).

*Richard F. Corkey,* assistant attorney general, with whom, on the brief, was *Francis A. Pallotti,* attorney general, for the appellee (defendant).

AVERY, J. In its finding, the public utilities commission states these facts: The plaintiff, Tony Bisconti, is the owner of a Cadillac sedan operated in New London and Groton as a taxicab under a certificate issued by the public utilities commission. The certificate holder himself operates the cab during daylight hours. During the night, the cab is usually operated for the certificate holder by his son, Angelo. Another son, Jerry, is employed as a spare driver when for any cause Angelo is not on duty. In the operation of his service, the plaintiff arranged telephone service at the Corine Hotel on State Street, in New London, where his son, Angelo, resides. When Angelo turns over the operation of his cab to his father in the morning, he makes some accounting of the collections during the preceding twelve hours. On the night of March 4 to 5, 1938, the cab was operated by the spare driver, Jerry Bisconti. Shortly after midnight, he collected two passengers, a sailor and a young woman, from a restaurant in New London, who directed the driver to take them to the Groton Cabins. Angelo had some knowledge of this employment in that credit was requested by the male passenger and was authorized after Jerry had driven to the Corine Hotel to confer with Angelo. After leaving the hotel, the cab took on four additional passengers in New London, two sailors and two young women. These new passengers, though not members of the same group as the first couple, wished to be taken to the same destination. When the cab reached the cabins, the driver called the proprietress who assigned the sailors and their companions to cabins. Later, during the same night, Jerry Bisconti transported four other passengers, two sailors and two young women, to these cabins where the couples were also assigned to cabins. The commission

found that these sailors and young women were being transported from New London to the cabins in Groton for immoral purposes, with the knowledge and understanding of the operator of the taxicab, Jerry Bisconti, and his brother, Angelo. The evidence certified fully supports this finding. The commission further found that notwithstanding the previous good character of the certificate holder, both personally and as a taxicab operator, his efforts to control the conduct of his employees in the operation of a taxicab were negligible, and that although he accepted the sums collected, he made no real attempt to check the operations of the taxicab, and after the arrest of his sons continued them in their positions. The conclusion of the commission was that the certificate holder was responsible under the circumstances for the improper operation of the cab by his son and accordingly the commission revoked his certificate. The plaintiff has annexed the evidence taken before the commission and has asked corrections of the finding, but no correction is permissible by which the position of the plaintiff would be advantaged.

The 1935 Cumulative Supplement to the General Statutes, § 1426c, makes provision for the issuance by the public utilities commission of a certificate for the operation of taxicabs and provides: "The commission may amend or, for sufficient cause shown, may revoke any such certificate." It is true in § 3861 of the General Statutes there is added to the penalty for the violation of any provision of the chapter concerning taxicabs or any rule or regulation established under it that the certificate for the operation of a taxicab may be revoked. Both this section and that of which § 1426c is an amendment formed a part of the original act concerning taxicabs, and the latter did not change

the language of the section it amended with reference to the power of the commission to revoke certificates. Section 3861 was clearly not intended to be a limitation upon that provision but its purpose was to make the conviction itself a ground of revocation in the discretion of the commission. See *Rose* v. *Liquor Control Commission*, 124 Conn. 689, 690, 199 Atl. 925. The provision of the order of the commission establishing regulations for taxicabs that the violation of any state motor vehicle law, the rules of the commission, or traffic ordinance may be sufficient cause for revocation of a certificate was an application of and not a limitation upon the broad provisions of § 1426c. The ultimate question in the case is whether, when it appears that a taxicab has been operated by the employees of a certificate holder for immoral purposes and that the commission finds that the certificate holder failed to exercise proper supervision of the operations of the taxicab by his employees, the commission acted arbitrarily, illegally, or unreasonably in revoking the certificate where it was not shown that the certificate holder had any actual knowledge of the character of the operations at the particular time in question.

Under the rule of civil liability, the owner of the taxicab is responsible for the acts of his servants acting within the scope of their authority. See *Son* v. *Hartford Ice Cream Co.*, 102 Conn. 696, 698, 129 Atl. 778; *State* v. *Curtiss*, 69 Conn. 86, 89, 36 Atl. 1014; *Commonwealth* v. *Morgan*, 107 Mass. 199, 203. A proceeding before the public utilities commission to revoke a license of this character is civil in its nature. *Glass* v. *State Board of Public Roads*, 44 R. I. 54, 115 Atl. 244. In this case, the Supreme Court of Rhode Island stated (p. 61): "Without attempting in advance to establish

a rule which will govern all possible cases, we think the Board is warranted in revoking or refusing to grant a license whenever in good faith and in the exercise of a reasonable discretion they find that the probable use of the automobile by the licensee would be a detriment to the public safety, welfare or morals." The permittee operates under such a franchise upon the implied condition that he will not in the operation of his taxicab knowingly offend against the public health, safety or morals. If the permittee operates through agents, it is his duty to exercise reasonable supervision over the operations of such agents to the end that the taxicab is not employed in violation of these conditions. If the commission finds that a permittee has failed to exercise such supervision of his employees and that the taxicab has been so operated, this constitutes sufficient cause to revoke the certificate. See *Rose* v. *Liquor Control Commission,* supra.

The appellant sought to correct the finding to show that the operation of the taxicab in question was his only means of livelihood. Upon an appeal of this nature, the court upon the facts as developed disposes of the issues upon equitable principles. *Kram* v. *Public Utilities Commission,* 126 Conn. 543, 550, 12 Atl. (2d) 775. Although it appears from the evidence certified that such a claim was made before the commission, the commission has not found this to be a fact and if the correction were made we do not think it would require the court to reverse the decision of the commission. As far as appears from the record, all the evidence was considered by the commission and upon the facts as found, with any correction to which the plaintiff is entitled, we cannot say that the public utilities commission acted arbitrarily, unreasonably or illegally in concluding that the appellant's failure to

supervise the operation of his cab by his sons was "sufficient cause" for the revocation of his license.

There is no error.

In this opinion the other judges concurred.