ESTHER KUHARSKI, ADMINISTRATRIX (ESTATE OF SOPHIE KUHARSKI) v. SOMERS MOTOR LINES, INC.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

270

Argued June 5—decided July 12, 1945.

*Harrison D. Schofield,* for the appellant (defendant).

*Luke H. Stapleton,* for the appellee (plaintiff).

JENNINGS, J. Plaintiff's intestate, Sophie Kuharski, alias Hild, was killed while riding in the cab of a tractor-trailer truck, belonging to the defendant, at the invitation of Francis Nihill, one of its regular drivers. The trial resulted in a judgment for the plaintiff and the defendant appealed. The finding is attacked and the following statement contains the corrections to which the defendant is entitled.

The defendant is a Massachusetts corporation engaged in operating trucks in interstate commerce between Springfield, Massachusetts, and New York City. Nihill had driven from Springfield to New York, arriving there about 8 a.m. on September 7, 1943. At

about 7 p.m. of the same day, Nihill started back to Springfield in the regular course of his employment on the defendant's business. He was accompanied on this trip by Benjamin Kakluskas. When they reached the City Line Tavern near the New York-Connecticut boundary, they stopped and had two or three beers in the company of two girls, one of whom was Sophie. Nihill permitted Sophie to board the truck and resumed his journey toward Springfield. Nihill was seated on the left behind the wheel, Sophie in, the middle and Kakluskas on the right. There was ample space for them to sit comfortably. A regulation of the Interstate Commerce Commission prohibited the transportation of riders in the defendant's truck and Nihill had been instructed by the defendant to carry no riders on the truck.

Between the tavern and Milford, Connecticut, Nihill started to swerve from the road about three times and Kakluskas had to grab the steering wheel and help get the truck back on the highway. On one occasion Nihill left the main highway, took a wrong turn and wound up in a dead-end street where he almost knocked down a fence. He also drove through a red light and was stopped by the state police. At Milford, he stopped for gas and looked sleepy at that time. For a short time after leaving Milford, which is about fifty miles from Hartford, Kakluskas kept watching Nihill, fearful that he would run off the road. Kakluskas also suggested that Nihill pull over to the side of the road and sleep for a while but Nihill replied that he would not do so because he was more than two hours late. Nihill knew or should have known that his condition was such that sleep was likely to overtake him before he reached Springfield if he continued to drive without pausing for rest and sleep, and his conduct in continuing to drive in his

then condition was reckless and wanton. Sophie was asleep most of the time. Kakluskas dozed before reaching Milford and soon after leaving there went to sleep and did not waken until after the accident.

The accident occurred on Main Street in Hartford at about 1:50 a.m. Main Street at that point is forty-four feet ten inches wide. Traffic was light, the weather was clear and the pavement dry. Nihill operated the truck in a northerly direction at an excessive and unreasonable rate of speed and lost control of it as a result of drowsiness. It mounted the westerly curb and struck an electric light pole with such force as to snap it off at the base. There were no marks on the road until the light pole was struck but marks on the road thereafter indicated that the driver tried to get the truck back onto the road. It continued on, however, for nearly one hundred and fifteen feet, struck and broke off a hydrant and came to rest on the westerly side of the road facing north. Kakluskas was rendered unconscious, as was Nihill. The latter was alive when removed from the truck but died on the way to the hospital. Sophie was killed.

The trial court concluded that Nihill was guilty of reckless and wanton misconduct; that, although Sophie was a trespasser, the defendant and Nihill were under a duty to use reasonable care to avoid injuring her after her presence was known; and that the regulation of the Interstate Commerce Commission was no defense.

The rights of a trespasser are limited, especially when his presence in what proves to be a place of danger is the result of an invitation extended by a servant contrary to instructions and the injury results from the acts of the servant. It has proved a difficult task to fit this situation into the conventional doctrine of respondeat superior and the courts are not agreed

either on the proper approach or on the conclusions reached. The question came before this court twenty-five years ago in *Kalmich* v. *White,* 95 Conn. 568, 111 Atl. 845. That case involved the injury of a trespasser on the defendant's vehicle caused by the ordinary negligence of the defendant's servant, who had permitted the plaintiff to ride on it. The conflict in the cases was noted but, after full consideration, the rule was stated to be (p. 571) "that when the presence of .a trespasser in a position of peril becomes known, the duty then arises of using ordinary care to avoid injuring him."

The defendant recognizes this but claims that the rule should be reconsidered in accordance with the Restatement, 1 Agency, § 242. This reads: "A master is not subject to liability for the conduct of a servant towards a person harmed as the result of accepting or soliciting from the servant an invitation, not binding upon the master, to enter or remain upon the master's premises or vehicle, although the conduct which immediately causes the harm is within the scope of the servant's employment." It is fair to say that there has been a tendency in the cases toward enlarging the freedom from liability of the master on the ground that an employee has no implied authority to invite third persons to ride with him under ordinary conditions. *Driscoll* v. *Scanlon,* 165 Mass. 348, 43 N. E. 100; *Liggett & Myers Tobacco Co.* v. *De Parcq,* 66 Fed. (2d) 678, 685; *Metropolitan Life Ins. Co.* v. *Gosney,* 101 Fed. (2d) 167, 171; *White* v. *Brainerd Service Motor Co.,* 181 Minn. 366, 371, 232 N. W. 626; *Dearborn* v. *Fuller,* 79 N. H. 217, 218, 107 Atl. 607; notes, 14 A. L. R. 145, 24 A. L. R. 670, 62 A. L. R. 1167, 74 A. L. R. 163; 5 Am. Jur. 729, 730; 39 C. J. 1304. It may be noted in passing that cases like *Delaware & H. R. Corporation* v. *Bonzik,* 105 Fed. (2d)

341, *Hartman* v. *Badger Tobacco Co.*, 210 Wis. 519, 522, 246 N. W. 577, and *Reis* v. *Mosebach*, 337. Pa. 412, 415, 12 Atl. (2d) 37, holding that the master is not liable for negligent conduct of the servant but is liable for his reckless, wanton or wilful misconduct, appear to ignore the essential issue, the scope of authority of the driver of the car.

The Connecticut doctrine "rests on the broader ground that every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his business and within the scope of their authority." *Wolf* v. *Sulik*, 93 Conn. 431, 436, 106 Atl. 443. Public policy requires that the master shall be held liable for negligent acts of the servant performed in the course of his employment even though they are not specifically authorized or are at times contrary to instructions. *Branchini* v. *Florio*, 119 Conn. 212, 216; 175 Atl. 670; *Son* v. *Hartford Ice Cream Co.*, 102 Conn. 696, 699, 129 Atl. 778. As pointed out in *Butler* v. *Hyperion Theatre Co., Inc.*, 100 Conn. 551, 554, 124 Atl. 220, quoting from *Limpus* v. *London General Omnibus Co.*, 1 H. & C. 526, 538, 158 Eng. Rep. 993, "the law is not so futile as to allow a master, by giving secret instructions to his servant, to discharge himself from liability." See also 2 C. J. S. 1202. In permitting Sophie to board the truck, Nihill was acting outside of his employment, but in then continuing his trip he was again in the course of it. The defendant was responsible for the results of negligent acts performed by him while in the performance of his master's business. *Kalmich* v. *White*, supra, 573; *Perry Supply Co.* v. *Brown*, 221 Ala. 290, 128 So. 227.

The defendant claims that there was no evidence from which the court could properly infer negligence

or recklessness. A discussion of this point would involve a repetition, perhaps in slightly different form, of the finding. This is unnecessary. The question of inferences has often been before this court, most recently in *Savin Express Co.* v. *Hanover Fire Ins. Co.*, 132 Conn. 181, 43 Atl. (2d) 69. Applying the rules there enunciated to the facts of this case, it is held that the facts antecedent to the accident, considered in connection with those of the accident itself as revealed by its reconstruction from the exhibits and facts found, form a reasonable basis for the inferences drawn and ultimate conclusions reached. *Bushnell* v. *Bushnell*, 103 Conn. 583, 592, 131 Atl. 432; *Potz* v. *Williams*, 113 Conn. 278, 281, 155 Atl. 211; *Freedman* v. *Hurwitz*, 116 Conn. 283, 285, 164 Atl. 647; *Ryan* v. *Scanlon*, 117 Conn. 428, 432, 168 Atl. 17. The facts supply a much stronger basis for the inference than do those of the somewhat similar case of *Boos* v. *Sauer*, 266 Mich. 230, 253 N. W. 278, on which the defendant relies. See *Manser* v. *Eder*, 263 Mich. 107, 248 N. W. 563. It was a question of fact for the trial court.

Section 2.36 of the motor carrier safety regulations of the Interstate Commerce Commission (49 C. F. R., Cum. Sup., 193.36) reads as follows: "No person, other than employees of the motor carrier, shall be transported upon any motor vehicle not designed or adapted and used for the transportation of passengers unless specifically authorized in writing by the motor carrier. . . ." The defendant claims that Sophie was violating this regulation in riding on the truck and that the plaintiff is therefore barred of recovery, citing cases like *Illinois Central R.R.* v. *Messina*, 240 U. S. 395, 36 Sup. Ct. 368. Assuming that the regulation had the force of law and that Nihill was violating it in transporting Sophie without permission in writing

from the defendant, it does not follow that Sophie was doing anything forbidden thereby. The act relied on in *Illinois Central R.R.* v. *Messina,* supra, imposed a penalty on both the railroad and the beneficiary of free transportation. The regulation relied on by the defendant is directed solely against the driver. It was not being violated by, nor did it cause any disability to sue in, Sophie or the plaintiff.

None of the three points raised by the defendant can avail him on this appeal.

There is no error.

In this opinion the other judges concurred.