BENJAMIN KAKLUSKAS *v.* SOMERS MOTOR LINES, INC.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 11—decided July 9, 1947

*Joseph V. Fay, Jr.*, with whom was *Harrison D. Schofield*, for the appellant (defendant).

*William M. Harney*, with whom was *Francis J. Fahey*, for the appellee (plaintiff).

BROWN, J. The plaintiff was injured while riding in the cab of a tractor-trailer truck of the defendant upon the invitation of the defendant's driver. From judgment rendered for the plaintiff, the defendant has appealed, attacking the finding and assigning error in the court's conclusions and the judgment. Judgment for damages for the death of Sophie Kuharski, who was also riding in the cab at the driver's invitation and was killed in the same accident,

was sustained by this court in *Kuharski* v. *Somers Motor Lines, Inc.*, 132 Conn. 269, 43 A. 2d 777.

The following is a brief outline of what transpired, as appears from the stipulation of admitted facts and from undisputed facts found. Shortly after 7 p.m. on September 7, 1943, the defendant's driver, within the scope of his employment and upon its business, started to drive the truck with a ten-ton load from New York City to Springfield. After a short stop at the City Line Tavern near the Connecticut state line, the driver resumed his journey about 8:30 p.m., accompanied as already stated, by the plaintiff, who sat on the right of the cab seat, and Sophie, who sat in the middle between the two men. The driver stopped the truck at Milford for about twenty minutes and purchased gasoline. He then continued on his way. The plaintiff slept during the greater part of the trip. About 1:50 a.m. in Hartford, he was awakened by the overturning of the truck in the accident which caused the injuries to him and the death of the other two. The court found that immediately prior to this time the truck was being operated by the driver at an excessive and unreasonable rate of speed, and that he lost control of it as a result of drowsiness. The defendant's assignment of error to this finding presents the only attack upon it calling for discussion.

The finding contains the following undisputed facts relevant and material upon the question whether the driver was drowsy and the probable effect thereof upon his conduct. At the City Line Tavern he had drunk two or three glasses of beer. About an hour and a half later he drove through a red traffic light without stopping until subsequently accosted by a police officer. Somewhat later, when the plaintiff

awoke as the truck veered or swerved to the right of the road, he observed that the driver's head was bowed down. Because of this the plaintiff shouted to him to inquire whether he was sleeping or whether he had been drinking; the plaintiff further asked if the driver wanted to pull over and go to sleep for a while, but he answered that he was two and one-half hours late and wanted to keep going, and that he was all right. He did not say that he was not sleepy. After that the driver, a regular driver for the defendant, which operated trucks between New York and Springfield, turned into a dead-end street by mistake, and this necessitated turning the truck around. About 1:50 a.m., as the truck was proceeding northerly on Main Street in Hartford, on the regular route to Springfield, it crossed to the westerly side of the road, mounted the curb and sidewalk and struck an electric light pole, breaking it off at the base. The truck continued along in a northerly direction on and off the westerly curb and sidewalk until it struck a fire hydrant with such force as to snap this off at the base. It then turned over on its left side, coming to rest on the westerly side of the road with its front end headed in a northerly direction at a point 150 feet north of the base of the electric light pole. Marks on the road indicated that after the truck struck the pole the driver tried to get it back onto the road and it then struck the hydrant. Main Street was forty-four feet ten inches wide, traffic was light, the weather clear and the pavement dry. It was about sixty miles from the gasoline station in Milford to the scene of the accident.

These undisputed facts are sufficient to warrant the inference by the trial court that not only at the time of but for a substantial period prior to the ac-

cident the driver was sleepy or drowsy, and that it was this drowsiness, to which he finally succumbed, which brought about loss of control of the truck, precipitated its swerve to the left side of the street and produced the accident and the injury to the plaintiff. A reasonable inference from these facts is the further fact that at the time the driver lost control he was operating the truck at an excessive and unreasonable speed. Entirely aside from the considerable speed indicated by the breaking off of the pole and the hydrant, considered in connection with the distance of 150 feet which the truck traveled during the interval before it was stopped by turning over on its side, the driving of such a vehicle with its ten-ton load at any speed at all in the absence of any control whatsoever of either speed or direction could not be held other than driving at an excessive and unreasonable speed. The finding in the paragraph complained of is not subject to correction.

In the view which we take of the case, the appeal presents but two further questions for determination. These are whether the facts found support the court's conclusions (1) that the defendant's driver was guilty of reckless and wanton misconduct which was the proximate cause of the accident in continuing to operate the truck when he knew or should have known that he was sleepy, and (2) that the plaintiff did not assume the risk of his injuries. As we have explained, the facts recited above not only warranted the inference that the driver was drowsy when the accident happened but that he had been in this condition for a substantial period prior thereto, or, to be more exact, from the time that he arrived at Milford. From these facts the court could properly infer that he knew or should have known that this was his condi-

tion and yet continued driving for at least sixty miles thereafter. Notwithstanding the defendant's argument to the contrary, "there is, in fact, no rule of law that forbids the resting of one inference upon facts whose determination is the result of other inferences. 1 Wigmore on Evidence (2d Ed.) § 41." *Ruerat* v. *Stevens,* 113 Conn. 333, 338, 155 A. 219; *State* v. *Hayes,* 127 Conn. 543, 555, 18 A. 2d 895; *Sliwowski* v. *New York, N. H. & H. R. Co.,* 94 Conn. 303, 310, 108 A. 805. The court's finding that the driver was drowsy and that he appreciated his condition afforded a proper and sufficient basis for its conclusion that he was guilty of reckless and wanton misconduct in continuing to operate the truck as he did. *Potz* v. *Williams,* 113 Conn. 278, 281, 155 A. 211; *Freedman* v. *Hurwitz,* 116 Conn. 283, 285, 164 A. 647; *Kuharski* v. *Somers Motor Lines, Inc.,* supra, 275. As sufficiently appears from what we have said concerning the facts, the court's finding that this conduct of the driver was the proximate cause of the plaintiff's injuries must stand.

In addition to such of the facts above recited as are relevant upon the issue of the plaintiff's assumption of the risk, the finding shows these further undisputed facts: There was ample space on the cab seat for all three to sit comfortably; the driver had a splint on two injured fingers of his right hand; the plaintiff fell asleep shortly after the driver had gone through the red light; in response to the plaintiff's inquiry upon awakening at the swerve of the truck to the right, the driver said he was all right and that the occurrence had been due to pain experienced in his injured fingers in making a turn; to the plaintiff's suggestion then made that the driver pull over and go to sleep for a while, he replied that he was two and

a half hours late and wanted to keep on going, repeating that he was all right and that there was nothing the matter with him; thereupon, after remaining awake for some time without anything unusual happening, the plaintiff again went to sleep; during the stop at the Milford gasoline station the plaintiff observed the driver as he walked about and concluded that he was "perfectly all right"; a few minutes later the plaintiff again went to sleep and except for awakening momentarily, when the driver informed him that they were entering the outskirts of Hartford, remained asleep until the accident happened.

Assumption of risk is an affirmative defense and the burden was upon the defendant to prove it. *Freedman* v. *Hurwitz*, supra, 289. The principle operates "in a rather strictly limited field. Because the essence of the doctrine is the assumption of the risk, the injured person must or ought reasonably to have perceived that it existed, and because it is the risk which is assumed the injured person must have appreciated it, or the situation must be such that he ought reasonably to have appreciated it and realized that unless he took steps to protect himself he would be liable to injury." Id., 287; *Doberrentz* v. *Gregory*, 129 Conn. 57, 61, 26 A. 2d 475. Applying this principle to the facts found, the court was warranted in its conclusion that the plaintiff did not assume the risk of his injuries.

Counsel for the defendant have directed attention to certain differences between the subordinate facts found in the *Kuharski* case and in the instant case and have urged that these are so significant as to leave the conclusion that the driver's conduct was reckless and wanton without essential support. As is apparent from what we have stated in holding this

conclusion justified, this argument cannot prevail. What we have said is conclusive that the defendant cannot succeed upon this appeal. Furthermore, since one of the court's justified conclusions supporting the judgment was that reckless and wanton misconduct of the defendant's driver was the proximate cause of the plaintiff's injuries, our decision does not involve a determination as to what breach of duty would have been essential to render the defendant liable for mere negligence. However, the defendant has argued with such earnestness that our decision in *Kuharski* v. *Somers Motor Lines, Inc.,* supra, has raised a doubt as to the duty owed a trespasser upon a vehicle, where the owner's delict is confined to negligence, that we take this occasion to reiterate the rule concerning that duty.

In that case at page 273, citing *Kalmich* v. *White,* 95 Conn. 568, 111 A. 845, we held that when the presence of a trespasser in a position of peril becomes known, the duty then arises of using ordinary care to avoid injuring him. *Kalmich* v. *White* was followed in *Salemme* v. *Mulloy,* 99 Conn. 474, 480, 121 A. 870, and also in the case of *Shiembob* v. *Ringling,* 115 Conn. 62, 65, 160 A. 429, and numerous others involving a trespass on lands. As we understand it, the defendant's contention is that inasmuch as in the *Kalmich* case the defendant knew that the trespassing plaintiff was "in a position of peril," since he was standing on the running board of the defendant's truck while it was negotiating a sharp turn, a failure by the defendant to afford ordinary care to the trespasser in that position in effect amounted to wilful or wanton misconduct, and so when injury resulted the defendant was liable for this negligence; but that unless a defendant not only knows of the

trespasser's presence but also that he is in a comparable "position of peril" he would not be liable for failing to use ordinary care to avoid injuring him. The rule is subject to no such restriction. It simply means that once the defendant has discovered the presence of the trespasser on his vehicle he owes "him the duty to so refrain from injuring him as a reasonably prudent man would do." *Shiembob* v. *Ringling,* supra, 66. The words "in a position of peril" mean no more than that the trespasser be in a situation where there is danger that he may be injured if the defendant fails to exercise reasonable care under the circumstances. This is the purport of the rule as laid down in *Kalmich* v. *White,* and it was in no way modified by our decision in *Kuharski* v. *Somers Motor Lines, Inc.,* supra.

There is no error.

In this opinion the other judges concurred.