WILLIAM BRADLOW v. AMERICAN DISTRICT TELEGRAPH COMPANY.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 13—decided July 13, 1944.

*Irving D. Johnson,* with whom was *William K. Lawlor,* for the appellant (plaintiff).

*William J. Larkin,* with whom, on the brief, was *Francis R. Stark,* of the New York bar, for the appellee (defendant).

DICKENSON, J. The complaint charges the defendant as a principal for the acts of its agent, who, it is alleged, in the performance of his duty of patrolling certain buildings, negligently, recklessly and wantonly beat the plaintiff. At the close of the evidence, the court, on motion of the defendant, directed a verdict for it, and later, on motion of the plaintiff, refused to set this aside. The appeal is from this ruling of the court.

The jury could have found the following facts: The defendant operates an electric protective service and has installed burglar and fire alarms in buildings under its protection. Its employees make regular rounds of inspection of these buildings during the night season. One of these was the First Federal Savings Bank, a three-story structure on Leavenworth Street in Waterbury. Across the street from this is the Connecticut Light and Power Company building. The next building is that of the American-Republican Company, a newspaper publisher. Between these two buildings is an alley called "Printers Court." Neither the Amer-

ican-Republican Company nor the Connecticut Light and Power Company had an agreement for protection with the defendant. On August 31, 1943, the defendant hired James Horan as an inspector or patrolman. He was put in training with an experienced employee, accompanying the latter on his rounds. On the night of September 8, Horan accompanied Jesse Exford, an experienced employee of the defendant, on his rounds. They entered the First Federal Savings Bank building and first inspected the third floor. There Horan broke a mirror, telling Exford, who was on another part of the floor at the time, that it was the result of an accident. They then descended to the second floor. There Horan picked up a desk name sign and threw it through a photograph. The men were supposed to inspect the bank on the first floor, but Exford told Horan to "come along," to get him out of the building. The two left the building, Horan locking the door. When he had locked the door, Horan blew a police whistle he carried, yelled "Stop the presses," and ran diagonally across the street toward the American-Republican building. A number of people had gathered and Horan told them to get off the street and to come and shut the presses. Exford tried to take him away and was in the front entryway of the American-Republican office with him at one time, but Horan ran out into the crowd and Exford lost track of him.

The plaintiff was an employee in the American-Republican building at the time. He heard the whistle blown while he was eating his lunch and went to the rear entrance of the building opening on a small alley off Printers Court. While he was there, a fellow employee came running up the stairs from the alley, past the plaintiff and nearly knocking him down. The plaintiff asked him what was going on, turned and saw

Horan dressed like a policeman. Horan grabbed the plaintiff and yanked him out of the building into Printers Court, beat him, pushed him up the alley to the front of the American-Republican building, struck him on the head with a flashlight, tore off part of his clothing, and continued to beat him until a police officer arrived, took Horan in charge and handcuffed him.

The plaintiff's contention is that Horan, when he made the unquestioned assault, was the defendant's agent upon his principal's business, and that the jury could have so found. The defendant claims that the American-Republican building was not one of those it had any business in, there was no occasion for Horan to enter it or to attack the plaintiff, and he had departed from his employment when he assaulted the plaintiff. The jury could have drawn no other reasonable inference from the evidence than that Horan was, for the time being, what a plaintiff's witness termed him—a maniac.

In *Rappaport* v. *Rosen Film Delivery System, Inc.*, 127 Conn. 524, 526, 18 Atl. (2d) 362, we stated that, in determining whether or not a servant was acting in the scope of his employment, the test is to be found in the nature of the tortious act and its relation or nonrelation to that which the actor was employed to do; that this principle applied whether the tort was wilful or negligent; and that in the great majority of cases this was a question of fact for the jury, but that occasions might arise in which the servant is so clearly without the scope of his authority that the question is one of law. In this case the evidence of such a departure is overwhelming. Horan apparently conceived the insane idea that the newspaper presses must be stopped at once. He left his line of employment in an apparent effort to stop them. In his bemused

state he ran into the American-Republican building and happened upon the unfortunate plaintiff. Whether or not he conceived him to be responsible for the operation of the presses does not appear and is not important, but it is apparent that Horan had departed from his employment, if not upon a "frolic" of his own (see *Mascika* v. *Connecticut Tool & Engineering Co.*, 109 Conn. 473, 477, 147 Atl. 11), to carry out the mad purpose of an insane delusion.

The plaintiff makes the claim that Horan had been provided by the defendant with the equipment of a police officer, that he was pursuing a man apparently fleeing from the vicinity of the Federal Bank building and hence that he was on the defendant's business. There was no evidence upon which the jury could find that he was engaged in such a pursuit. The only conclusion they could have reached was that Horan was on a mission of his own.

The case falls well within the ruling in *Turner* v. *American District Telegraph & Messenger Co.*, 94 Conn. 707, 110 Atl. 540, and is factually stronger. There, a roundsman employed as was Horan in the case before us, while making his rounds, got into an altercation with a watchman and shot him. We said (p. 713), "A master is liable only for those torts of his servant which are done with a view of furthering his master's business within the field of his employment—for those which have for their purpose the execution of the master's orders or the doing of the work assigned to him to do." We reiterated the statement in *Shiembob* v. *Ringling*, 115 Conn. 62, 68, 160 Atl. 429, and recognized its principle in *Rappaport* v. *Rosen Film Delivery System, Inc.*, supra.

There is no error.

In this opinion the other judges concurred.