A-G FOODS, INC. *v.* PEPPERIDGE FARM, INC., ET AL.
(13789)

PETERS, C. J., CALLAHAN, GLASS, HULL and F. X. HENNESSY, Js.

Argued May 9—decision released August 7, 1990

*Louis B. Blumenfeld,* with whom were *Vincent M. DeAngelo* and *Lorinda S. Coon,* for the appellant-appellee (plaintiff).

*John B. Farley,* with whom was *Joseph G. Lynch,* for the appellee-appellant (named defendant).

CALLAHAN, J. The plaintiff, A-G Foods, Inc., doing business as Fitzgerald Foods, brought this action for damages against the defendants, Pepperidge Farm, Inc. (Pepperidge Farm), and Anthony Spinelli. The revised complaint alleged, inter alia, that Spinelli, a distributor of Pepperidge Farm bakery goods, had defrauded the plaintiff by charging its stores for goods he had not delivered. As to Pepperidge Farm, the complaint alleged that, under the doctrine of respondeat superior, Pepperidge Farm was vicariously liable for each of the following: fraud (sixth count); reckless indifference and/or intentional and wanton disregard for the plaintiff's rights (seventh count); theft (eighth count); and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes §§ 42-110a through 42-110q (tenth count). It further alleged that Pepperidge Farm was negligent in failing to supervise Spinelli properly (ninth count) and that its negligence in failing to supervise Spinelli and to discover the fraud constituted a violation of CUTPA (tenth count).

Before the trial of this matter, in a criminal proceeding, Spinelli pleaded guilty to larceny. In that case, the trial court imposed a suspended sentence, placed him on probation for five years, and ordered as a condition

of probation that he make restitution to the plaintiff. Spinelli paid the plaintiff approximately $88,000 pursuant to the restitution order.

This case was thereafter tried to a jury, which answered twenty interrogatories and returned a verdict for the plaintiff on all counts, finding that the plaintiff had sustained damages of $250,000.[1] Pepperidge Farm moved to set aside the verdict against it and for judgment notwithstanding the verdict, claiming, inter alia, that there was insufficient evidence to conclude that Spinelli was acting within the scope of his employment and in furtherance of Pepperidge Farm's business when he stole from the plaintiff. The trial court agreed and rendered judgment in favor of Pepperidge Farm notwithstanding the verdict *only* on the sixth, seventh and eighth counts. In addition, the trial court ordered a remittitur, as to Pepperidge Farm, of $88,000, the amount the plaintiff had received from Spinelli as restitution, and set aside, as to Pepperidge Farm, the jury's verdict awarding treble damages to the plaintiff. The plaintiff appealed the trial court's decision to the Appellate Court and Pepperidge Farm cross appealed. We transferred these appeals to ourselves pursuant to Practice Book § 4023.

On appeal, the plaintiff contends that the trial court was incorrect when it: (1) concluded that there was insufficient evidence to support the jury's finding that Spinelli was acting within the scope of his employment and in furtherance of Pepperidge Farm's business when he defrauded and stole from the plaintiff; (2) set aside the jury's award of treble damages; and (3) allowed a remittitur. On its cross appeal, Pepperidge Farm raises two issues: (1) whether its negligent supervision of Spinelli

---

[1] Following the jury verdict, the court awarded the plaintiff $1,043,593.66 in damages and costs against Spinelli. He has not appealed from that judgment.

constituted a violation of CUTPA; and (2) if so, whether the trial court properly instructed the jury on the CUTPA claim.[2] We reverse in part the decision of the trial court.

The jury could reasonably have found the following facts. In October, 1982, the defendants entered into a consignment agreement whereby Pepperidge Farm granted Spinelli an exclusive franchise to distribute Pepperidge Farm bakery products within a specified geographical area.[3] By the terms of the agreement, Spinelli delivered Pepperidge Farm bakery products to both "chain" and "independent" grocery stores, including two independent grocery stores owned and operated by the plaintiff, in the towns of Avon and Simsbury. The consignment agreement required Spinelli to maintain records of the "consigned products received and sales and deliveries made" and allowed Pepperidge Farm to inspect those records.

Spinelli ordered bakery products from Pepperidge Farm on a weekly basis. Each morning he would pick up his order at the Pepperidge Farm depot and deliver the bakery goods to the various grocery stores. With respect to the independent grocery stores, Spinelli testified to the following billing procedure.[4] Pepperidge Farm billed Spinelli once a week for all of the bakery goods that he purchased less those returned. Spinelli then billed each store, on an individual basis, for the bakery items he had delivered the previous week. The stores remitted payment directly to Spinelli rather than

---

[2] Pepperidge Farm has not appealed the trial court's judgment that an agency relationship existed between the defendants.

[3] Spinelli had purchased the right to enter into the consignment agreement from the previous distributor.

[4] Spinelli testified that Pepperidge Farm had a different procedure to handle the billing arrangements of the chain grocery stores. Pepperidge Farm would bill the chain grocery stores directly, and would pay Spinelli a commission based upon the amount of goods delivered to the chain stores.

to Pepperidge Farm. Spinelli's profit was the difference between the sales price, which he controlled, and the price he had paid Pepperidge Farm for its products. Pepperidge Farm was unaware of the quantity or type of goods delivered to each independent grocery store.

Approximately one year after he took over his route from his predecessor, Spinelli began charging the plaintiff for goods he did not deliver. Because of the lax check-in procedure at the plaintiff's stores, Spinelli was able surreptitiously to alter the invoices by inflating the amount of bakery products he delivered to them. Pepperidge Farm was unaware of Spinelli's scheme and never received any money as a result of it. Spinelli testified that he did not overcharge any other stores on his route. After the fraudulent invoices were discovered, Spinelli was arrested in September, 1985, and subsequently pleaded guilty to larceny. Thereafter, the plaintiff commenced this civil action against both Spinelli and Pepperidge Farm.

I

A

The plaintiff first argues that the trial court should not have set aside the jury verdict on the sixth, seventh and eighth counts because there was sufficient evidence presented to the jury to show that Spinelli acted within the scope of his employment and in furtherance of Pepperidge Farm's business when he stole from the plaintiff. In rendering judgment for Pepperidge Farm,[5] the

---

[5] After a trial court has set aside a verdict, it may then either order a new trial or direct the entry of judgment as requested by the petitioning party. Practice Book § 321. In determining which alternative is appropriate when the trial court sets aside a verdict for insufficiency of the evidence, the trial court, in its discretion, must determine whether there is any further evidence that might support the jury verdict that, through no fault of the plaintiff, was not introduced in the first trial. *Masterson* v. *Ather-*

trial court concluded that "there was no evidence: [1] that Pepperidge Farm conspired with Spinelli or ratified his actions afterward; [2] that Pepperidge Farm profited in any significant or even measurable way from Spinelli's theft; [3] that Spinelli's thefts were motivated in the slightest by the intent to serve Pepperidge Farm's interests; or [4] that Spinelli's conduct in stealing was of the same general nature as that which Pepperidge Farm had authorized, or incidental to such conduct." Specifically, the plaintiff objects to the trial court's second and fourth conclusion.

"The trial court has the inherent power to set aside a jury verdict which, in the court's opinion, is either against the law or the evidence. Maltbie, Conn. App. Proc. § 181. . . . The decision to set aside a verdict involves the exercise of a broad discretion in the trial court which, in the absence of a clear abuse, will not be disturbed and, in reviewing the exercise of that discretion, every reasonable presumption should be indulged in favor of its correctness. *Jacobs* v. *Goodspeed,* 180 Conn. 415, 429 A.2d 915 (1980)." *O'Brien* v. *Seyer,* 183 Conn. 199, 208, 439 A.2d 292 (1981); *Palomba* v. *Gray,* 208 Conn. 21, 23–24, 543 A.2d 1331 (1988). " ' "[The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they or some of them were

*ton,* 149 Conn. 302, 316, 179 A.2d 592 (1962); *Robinson* v. *Southern New England Telephone Co.,* 140 Conn. 414, 421, 101 A.2d 491 (1953). We will not disturb the trial court's judgment absent an abuse of discretion. *Robinson* v. *Southern New England Telephone Co.,* supra. The plaintiff does not claim that it has further evidence, other than that presented at trial, that would warrant a new trial.

influenced by prejudice, corruption or partiality." *Burr* v. *Harty,* 75 Conn. 127, 129, 52 A. 724 (1902).' *Palomba* v. *Gray,* [supra, 24]." *Champagne* v. *Raybestos-Manhattan, Inc.,* 212 Conn. 509, 555, 562 A.2d 1100 (1989).

"Ordinarily, it is a question of fact as to whether a wilful tort of the servant has occurred within the scope of the servant's employment and was done to further his master's business. See, e.g., *Rappaport* v. *Rosen Film Delivery System, Inc.,* [127 Conn. 524, 526, 18 A.2d 362 (1941)]. But there are occasional cases where a servant's digression from duty is so clear-cut that the disposition of the case becomes a matter of law. *Bradlow* v. *American District Telegraph Co.,* 131 Conn. 192, 195, 196, 38 A.2d 679 [1944]; *Turner* v. *American District Telegraph & Messenger Co.,* 94 Conn. 707, 715, 110 A. 540 [1920]." *Pelletier* v. *Bilbiles,* 154 Conn. 544, 547–48, 227 A.2d 251 (1967).

"In reviewing the court's action in rendering a judgment notwithstanding the verdict, we consider the evidence in the light most favorable to the [plaintiff]. *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn. 491, 499, 208 A.2d 748 [1965]; *Hemmings* v. *Weinstein,* 151 Conn. 502, 504, 199 A.2d 687 [1964]; *Lurier* v. *Danbury Bus Corporation,* 144 Conn. 544, 547, 135 A.2d 597 [1957]." *Pelletier* v. *Bilbiles,* supra, 546. In support of its argument that Pepperidge Farm benefited from Spinelli's fraud, the plaintiff refers to testimony regarding the location and amount of shelf space devoted to Pepperidge Farm's products. According to the testimony presented at trial, a distributor, such as Spinelli, attempts to maximize the shelf space devoted to his products because "ideally" more shelf space helps to stimulate demand and hence would increase the likelihood of sales. Because grocery stores are concerned with the dollar sales volume for every foot of shelf space in the store, the plaintiff had allo-

cated its limited shelf space among the bakery distributors on the basis of the amount of bakery products purchased from each. When Spinelli fraudulently increased the amount of bakery products the plaintiff purchased from Pepperidge Farm, the plaintiff claims it allocated a larger portion of the shelf space devoted to bakery products to Pepperidge Farm. Thus, the plaintiff contends Pepperidge Farm received an indirect benefit from Spinelli's fraud because more shelf space increased the amount of "legitimate" sales of Pepperidge Farm's bakery goods.

In its memorandum of decision, the trial court concluded, however, that this evidence was insufficient as a matter of law to support the jury's verdict because "[t]here was no evidence that would enable the jury to quantify this effect or, indeed, even to determine whether in fact it materialized." We agree.

We have long adhered to the principle that in order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business. *Cardona* v. *Valentin,* 160 Conn. 18, 22, 273 A.2d 697 (1970); *Pelletier* v. *Bilbiles,* supra, 547; *Antinozzi* v. *A. Vincent Pepe Co.,* 117 Conn. 11, 13, 166 A. 392 (1933); *Son* v. *Hartford Ice Cream Co.,* 102 Conn. 696, 699, 129 A. 778 (1925). "But it must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply." *Mitchell* v. *Resto,* 157 Conn. 258, 262, 253 A.2d 25 (1968); *Wells* v. *Walker Bank & Trust Co.,* 590 P.2d 1261, 1264 (Utah 1979) (if employee's actions are not authorized by his employer and he is acting for his own interests and not in furtherance of his employer's business, employer cannot be held vicariously liable for employee's actions).

While the plaintiff offered substantial testimony that increased shelf space might increase Pepperidge Farm's sales, there was no evidence that this was the actual result. Although the amount of shelf space allocated to Pepperidge Farm increased,[6] there was no testimony that *actual* sales had increased during Spinelli's tenure. Further, the plaintiff failed to introduce any evidence that the allocation of shelf space to Pepperidge Farm decreased after the fraud was discovered. We conclude that, on the basis of the evidence presented, any possible indirect benefit Pepperidge Farm might have received by the increased shelf space was so de minimus that, as a matter of law, it does not support a conclusion that Spinelli acted within the scope of his employment and in furtherance of Pepperidge Farm's business. See *Mitchell* v. *Resto,* supra, 262.

The plaintiff also objects to the trial court's fourth conclusion. The plaintiff argues that because the trial court found that "every fraudulent transaction was mixed in with the legitimate business of Pepperidge Farm" and that almost "all of the fraudulent transactions took place at the stores and during the hours when Spinelli was engaged in selling Pepperidge Farm merchandise," Spinelli was acting within the scope of his employment. The factual conclusion that Spinelli's fraud occurred during business hours, however, is not sufficient to support the conclusion that Spinelli was acting within the scope of his employment. See *Cardona* v. *Valentin,* supra, 23; *Levitz* v. *Jewish Home for the Aged, Inc.,* 156 Conn. 193, 198, 239 A.2d 490 (1968); *Kasner* v. *Gage,* 281 Minn. 149, 153, 161 N.W.2d 40 (1968). A servant acts within the scope of employment "while engaged in the service of the master, and it is

---

[6] Because the record does not reveal *when* during Spinelli's tenure the increase in shelf space occurred, it is unclear whether it occurred as a direct result of Spinelli's fraud or because of the installation of additional bread racks in the store.

not synonymous with the phrase 'during the period covered by his employment.' " *Levitz* v. *Jewish Home for the Aged, Inc.,* supra. While a servant may be acting within the scope of his employment when his conduct is " 'negligent, disobedient and unfaithful' "; *Butler* v. *Hyperion Theatre Co.,* 100 Conn. 551, 554, 124 A. 220 (1924), quoting *Loomis* v. *Hollister,* 75 Conn. 718, 723, 55 A. 561 (1903); that does not end the inquiry. Rather, "the vital inquiry in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business . . . ." *Butler* v. *Hyperion Theatre Co.,* supra, 556. Unless Spinelli was actuated at least in part " ' "by a purpose to serve a principal, the principal is not liable." ' *Meyers* v. *National Detective Agency, Inc.,* 281 A.2d 435, 437 (D.C.C.A. 1971), quoting *M.J. Uline Co.* v. *Cashdan,* 84 U.S. App. D.C. 58, 59, 171 F.2d 132, 133 (1948)." *International Distributing Corporation* v. *American District Telegraph Co.,* 569 F.2d 136, 139 (D.C. Cir. 1977).

As the trial court concluded in its third finding, there was no evidence to indicate that Spinelli, by his theft, intended to serve Pepperidge Farm's interests at all. In its brief, the plaintiff concedes that, although Spinelli's fraud increased Pepperidge Farm's shelf space, that result was unintentional. Further, there was no evidence that Pepperidge Farm knew of Spinelli's fraudulent activity or received any of the monetary proceeds of Spinelli's fraud. We conclude that the trial court did not abuse its discretion in determining that the jury could not reasonably and logically have found, from the evidence adduced at trial, that Spinelli was acting within the scope of his employment and in furtherance of Pepperidge Farm's business.

B

The plaintiff contends, for the first time on appeal, that the Restatement (Second) of Agency § 261 governs this case, and thus it need not establish that Spinelli acted in furtherance of Pepperidge Farm's business. Section 261 provides: "A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud." Although the plaintiff admits that § 261 "is not precisely the statement of the law used by the parties and the court below," he asserts that, because it is a "narrowly drawn application of the general rule," we may apply it to sustain the jury verdict and reverse the trial court. We disagree.

"Our practice is to review claims that have been 'distinctly raised at the trial.' Practice Book § 4185." *Season-All Industries, Inc.* v. *R. J. Grosso, Inc.,* 213 Conn. 486, 495, 569 A.2d 32 (1990). "Practice Book § 4185 provides in relevant part that '[t]he supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court.' Plain error ' "review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985).' *State* v. *Franko,* 199 Conn. 481, 489 n.10, 508 A.2d 22 (1986)." *Scott* v. *Barrett,* 212 Conn. 217, 222, 561 A.2d 941 (1989).

In the plaintiff's request to charge, the plaintiff asked the court to instruct the jury to determine "whether

or not the wrongful conduct of Mr. Spinelli occurred in the course of his employment and in furtherance of Pepperidge Farm's business." The court's instructions to the jury substantially mirrored that language, as did Interrogatory No. 8.[7] As the plaintiff concedes in its brief, neither party objected to this portion of the trial court's instructions to the jury.

By failing to take an exception to the court's charge to the jury, the plaintiff accepted the instructions as the law of the case. *Lengel* v. *New Haven Gas Light Co.,* 142 Conn. 70, 77, 111 A.2d 547 (1955). "The jury were bound to follow the court's instructions and to bring in a verdict for the plaintiff consistent with them, or a verdict for the defendants." *Rosenblatt* v. *Berman,* 143 Conn. 31, 37, 119 A.2d 118 (1955). We must view the claim of insufficiency of the evidence in light of the law of the case. *Lengel* v. *New Haven Gas Light Co.,* supra. " 'A party cannot present a case to the trial court on one theory and then ask a reversal in the supreme court on another.' *Maltbie,* Conn. App. Proc. § 305; *Arcari* v. *Dellaripa,* 164 Conn. 532, 537, 325 A.2d 280 [1973]; and a party is not entitled to raise issues on appeal which have not been raised in the trial court. *Zeller* v. *Kugell,* 145 Conn. 729, 730, 141 A.2d 240 [1958]." *Grody* v. *Tulin,* 170 Conn. 443, 447–48, 365 A.2d 1076 (1976). " '[In] the interests of justice,' we decline to exercise our discretion to review" this claim of the plaintiff. *Scott* v. *Barrett,* supra, 223.

## II

The plaintiff next argues that the trial court should not have set aside the jury's award of treble damages

[7] The trial court instructed the jury, in part, as follows: "If you find that the plaintiff has proved, by a preponderance of the evidence, that Mr. Spinelli was an agent or employee of Pepperidge Farm, rather than an independent contractor, then you must decide whether the financial losses that A-G Food claims it suffered occurred while Mr. Spinelli was acting within the scope of his employment and in furtherance of Pepperidge Farm's business at the time the plaintiff claims it suffered those losses."

against Pepperidge Farm. The plaintiff maintains that General Statutes § 52-564 imposes liability for treble damages upon a principal who is vicariously liable for the acts of its agent. Before treble damages can be imposed, however, the proof must demonstrate a violation of the specific statute authorizing the extraordinary damages. *DeMilo* v. *West Haven*, 189 Conn. 671, 676, 458 A.2d 362 (1983); *Tillinghast* v. *Leppert*, 93 Conn. 247, 250, 105 A. 615 (1919). Section § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." Having determined that Pepperidge Farm is not vicariously liable to the plaintiff for the theft perpetrated by Spinelli, see Part I, supra, we conclude that the trial court correctly determined that Pepperidge Farm could not be held liable for treble damages to the plaintiff.

### III

On its cross appeal, Pepperidge Farm challenges the trial court's conclusion that its negligence provided a sufficient basis to support the jury's verdict that it had violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes §§ 42-110a through 42-110q. The following facts are relevant to this claim. In the ninth count of the revised complaint, the plaintiff alleged that Pepperidge Farm was negligent in failing to supervise Spinelli. The jury returned a verdict in favor of the plaintiff on the negligence count, but, in answering interrogatories, the jury also determined that the plaintiff was 40 percent negligent. The court rendered judgment thereon, concluding that there was sufficient evidence to support the jury's verdict. Specifically, in its memorandum of decision, the court found that Pepperidge Farm had never reviewed Spinelli's books and records, as it was authorized to do by the terms of the consignment agreement, and had never compared Spinelli's records to their own. This lack of

supervision, the trial court stated, "enabled Spinelli to steal from the plaintiff." Pepperidge Farm has not appealed the judgment rendered on the ninth count.

In the tenth count of the revised complaint, the plaintiff alleged that Pepperidge Farm was vicariously liable for a violation of CUTPA and that its failure to supervise Spinelli properly and to discover the fraud he was perpetrating constituted an independent basis for a violation of CUTPA. Although the trial court determined that Pepperidge Farm could not be held vicariously liable for Spinelli's actions, it concluded that Pepperidge Farm nevertheless had violated CUTPA because of its negligence in failing to supervise Spinelli adequately. Therefore, it upheld the jury's verdict in favor of the plaintiff on the tenth count of the plaintiff's complaint.

Thereafter, on January 18, 1989, Pepperidge Farm filed a motion to reargue claiming that: (1) its negligence was insufficient as a matter of law to sustain a finding of a CUTPA violation; and (2) even if its negligence was sufficient to support such a finding, the court had failed to instruct the jury as to liability under CUTPA for negligence. Thereafter, the trial court denied the motion concluding that, although the court had instructed the jury only as to vicarious liability, the jury had the complaint during its deliberations, and had concluded that, pursuant to the ninth count, Pepperidge Farm was negligent. Therefore, the court opined, "the jury had [a] sufficient basis . . . for finding Pepperidge Farm negligent on the tenth count" relating to the CUTPA violation. Pepperidge Farm has renewed both claims on appeal. Because we conclude that Pepperidge Farm's negligence did not constitute a violation of CUTPA, we need not address the defendant's second argument.

Pepperidge Farm argues that its negligence was not an unfair or deceptive trade practice within the meaning of General Statutes § 42-110b (a).[8] We agree. Section 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." In determining when a practice is unfair, we have " 'adopted the criteria set out in the "cigarette rule" by the federal trade commission . . . "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." *Conaway* v. *Prestia,* [191 Conn. 484, 492–93, 464 A.2d 847 (1983)], quoting *FTC* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 244–45 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972).' *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* 192 Conn. 558, 567–68, 473 A.2d 1185 (1984); see Statement of Basis and Purpose of Trade Regulation Rule 408, 'Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking,' 29 Fed. Reg. 8324, 8355 (1964)." *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 239, 520 A.2d 1008 (1987); *Daddona* v. *Liberty Mobile Home Sales, Inc.,* 209 Conn. 243, 254, 550 A.2d 1061 (1988).

"Moreover, in 1980 the commission 'reviewed those factors and concluded that "[u]njustified consumer

---

[8] In its brief, the plaintiff suggests that "the jury may well have considered" the allegations in the tenth count of the complaint not as negligence, but rather "intentional business decisions of the defendant." We disagree. The court did not instruct the jury as to the plaintiff's current theory of liability under CUTPA nor does the complaint allege such a theory.

injury is the primary focus of the FTC Act, and the most important of the three . . . criteria." ' D. Rice, 'Consumer Unfairness at the FTC: Misadventures in Law and Economics,' 52 Geo. Wash. L. Rev. 1, 4 (1983), quoting letter from FTC commissioners, December 17, 1980. '[T]he Commission explained that regulation is permissible only if a practice causes [unjustified] injury that is substantial . . . .' Id." *Atlantic Richfield Co.* v. *Canaan Oil Co.*, supra, 242–43.

"In discussing the third criterion, the federal trade commission has stated: 'The independent nature of the consumer injury criterion does not mean that every consumer injury is legally "unfair," however. To justify a finding of unfairness the injury must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; *and it must be an injury that consumers themselves could not reasonably have avoided.'* Letter from Federal Trade Commission to Senators Ford and Danforth (Dec. 17, 1980) (reprinted in Averitt, 'The Meaning of "Unfair Acts or Practices" in § 5 of the Federal Trade Commission Act,' 70 Geo. L.J. 225, 291 [1981])." (Emphasis added.) *McLaughlin Ford, Inc.* v. *Ford Motor Co.*, supra, 569–70. This test is "equally applicable when a business person or competitor claims substantial injury." Id., 570.

Because neither the second or third prong of the "cigarette rule" has been satisfied, we conclude that Pepperidge Farm's negligence was not an unfair practice within the meaning of CUTPA.[9] Clearly Pepperidge

[9] The Federal Trade Commission has identified the "four primary categories of practices which have been prohibited as unfair: (1) withholding material information; (2) making unsubstantiated advertising claims; (3) using high-pressure sales techniques; and (4) depriving consumers of various post-purchase remedies." *American Financial Services* v. *F.T.C.*, 767 F.2d 957, 979 (D.C. Cir. 1985), cert. denied, 475 U.S. 1011, 106 S. Ct. 1185, 89 L. Ed. 2d 301 (1986).

Farm's negligence did not constitute an "immoral, unethical, oppressive or unscrupulous" practice. In addition, because the jury found that the plaintiff was 40 percent negligent the plaintiff has not proved that it "could not reasonably have avoided" any injury.[10] On the basis of this record, we conclude that the plaintiff has failed to show that Pepperidge Farm caused an *unjustified consumer injury,* a necessary predicate for recovery under CUTPA. *American Financial Services* v. *F.T.C.,* 767 F.2d 957, 971 (D.C. Cir. 1985), cert. denied, 475 U.S. 1011, 106 S. Ct. 1185, 89 L. Ed. 2d 301 (1986). Contrary to the claim of the plaintiff, the first prong, standing alone, is insufficient to support a CUTPA violation, at least when the underlying claim is grounded solely in negligence. Id.; see *Atlantic Richfield Co.* v. *Canaan Oil Co.,* supra, 242.

## IV

The plaintiff next maintains that the trial court should not have ordered, as to Pepperidge Farm, a remittitur of $88,000, the amount Spinelli had paid the plaintiff in restitution. The following facts are relevant to this claim. The trial court instructed the jury to ignore the $88,000 payment during its deliberations. Thereafter, the jury found that the plaintiff had sustained damages of $250,000. The trial court rendered judgment awarding the plaintiff $1,043,593.66, including treble damages pursuant to General Statutes § 52-564, against Spinelli. As to Pepperidge Farm, the trial court awarded the plaintiff $250,000 in compensatory damages, $65,000 in attorneys' fees, $26,334.78 in costs and $97,617.49 in interest.

---

[10] Spinelli testified that he had developed his scheme because of the plaintiff's lax check-in procedures. Also, he had overcharged only the plaintiff's stores and *not* any other independent or chain grocery store. Further, Rocco Cianfarani, the store manager for the plaintiff's Simsbury store, testified that employees at the plaintiff's Simsbury store failed to follow its own procedures for receiving deliveries.

In ordering the remittitur, the trial court concluded that the plaintiff was entitled to recover only compensatory damages against Pepperidge Farm. Because the plaintiff had already "received partial payment of its actual loss from one of the tortfeasors," the trial court determined that Pepperidge Farm's liability should be reduced by the $88,000 payment. The plaintiff objects to the trial court's characterization of the $88,000 payment by Spinelli as compensatory. The plaintiff maintains that Spinelli's payment should be applied to the "statutory treble damages for which [the jury found] Spinelli is responsible," and should not be applied to reduce the amount of money Pepperidge Farm owes the plaintiff. We disagree.

" 'The assessment of damages is peculiarly within the province of the trier and the award will be sustained so long as it does not shock the sense of justice. The test is whether the amount of damages awarded falls within the necessarily uncertain limits of fair and just damages. *Manning* v. *Michael,* 188 Conn. 607, 616, 452 A.2d 1157 (1982).' *Herb* v. *Kerr,* 190 Conn. 136, 139, 459 A.2d 521 (1983) . . . ." *Buckman* v. *People Express, Inc.,* 205 Conn. 166, 174–75, 530 A.2d 596 (1987). "When a verdict is excessive as a matter of law, the amount of the remittitur . . . rests largely within the discretion of the trial court. 'Its action is entitled to full support unless it abused its discretion.' *Allen* v. *Giuliano,* 144 Conn. 573, 578, 135 A.2d 904 (1957). 'In determining whether the trial court abused its discretion, we must make every reasonable presumption in favor of the correctness of its action.' *Brooks* v. *Singer,* 147 Conn. 719, 720, 158 A.2d 745 (1960)." *Alfano* v. *Ins. Center of Torrington,* 203 Conn. 607, 614, 525 A.2d 1338 (1987).

It is clear that the $88,000 payment was not made to satisfy Spinelli's obligation to the plaintiff for treble damages pursuant to the trial court's judgment. See

General Statutes § 52-564. This court long ago declared that "[t]his [statute] has never been regarded as a penal statute. Indeed, actions on this statute are not ordinarily brought until [after] the defendant has been tried, convicted and sentenced in the criminal court for the stealing." *Plumb* v. *Griffin,* 74 Conn. 132, 135, 50 A. 1 (1901). A conviction for larceny does not by itself authorize the award of treble damages to the owner of the property pursuant to § 52-564. *Salisbury* v. *State,* 6 Conn. 101, 105 (1826). Therefore, the restitution ordered by the criminal court was restitution to the plaintiff of the amount stolen by Spinelli, not payment on account of treble damages.

The plaintiff has failed to present any principled reason as to why the $88,000 payment should not be applied to the compensatory portion of the damage verdict. On the basis of this record, we cannot conclude that the trial court abused its discretion when it ordered the remittitur.

In sum, Pepperidge Farm is, in accordance with the trial court's judgment on the ninth count, jointly and severally liable to the plaintiff for damages caused by its negligence. Because Pepperidge Farm's negligence did not constitute a violation of CUTPA, however, the court's judgment awarding $91,334.78 in attorneys' fees and costs to the plaintiff pursuant to CUTPA must be set aside. See General Statutes § 42-110g (d).

In returning a verdict in favor of the plaintiff on the ninth count, the jury also found that the plaintiff had been 40 percent negligent. Therefore, we must apply our comparative negligence statute, General Statutes § 52-572h (b)[11] which provides in pertinent part: "The

---

[11] General Statutes § 52-572h (b) provides: "NEGLIGENCE ACTIONS. DOCTRINES APPLICABLE. LIABILITY OF MULTIPLE TORTFEASORS FOR DAMAGES . . . .

"(b) In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or his legal respresentative

economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering . . . ." Thus, Pepperidge Farm is liable for only 60 percent of the compensatory damages of $250,000, or $150,000. Because we uphold the trial court's order of a remittitur, this amount must be reduced by $88,000.[12]

We reverse the trial court's judgment as to the tenth count and remand the case to the trial court with direction to render judgment in accordance with this opinion.

In this opinion the other justices concurred.

to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section."

[12] We have not taken into account the interest computation.