[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
The defendants, Hartford Roman Catholic Diocesan Corporation ("Diocese") and Church of the Holy Spirit ("Church"), have moved to strike the Sixth through Ninth Counts of the plaintiff's complaint in this action in which the plaintiff seeks damages from those defendants and the defendant, Peter Zizka, as a result of Zizka's alleged sexual exploitation of the plaintiff when she was 13 years old. The moving defendants assert that the plaintiff has failed to set forth a cause of action against them based on respondeat superior (Sixth Count), that the Connecticut Unfair Trade Practices Acts, § 42-110a et seq. ("CUTPA") does not apply here because the defendants were not engaged in trade CT Page 2787 or commerce (Eighth Count), and that the court's consideration of the allegations of the defendants' negligence is an impermissible intrusion into religious affairs in violation of the United States Constitution (Seventh and Ninth Counts).
Facts alleged in the complaint
The complaint alleges that commencing in the summer of 1975 when the plaintiff was 13 years of age, she received counseling from Peter Zizka, a Roman Catholic priest, who was then employed by the Diocese and assigned as a priest at the Church. Count One ¶¶ 2-4. In July or August 1975 while counseling the plaintiff in his rectory office at the Church, Zizka sexually abused the plaintiff by kissing and fondling her. Count One ¶ 5. Such acts continued until on or about November 13, 1975 at which time Zizka had sexual intercourse with the plaintiff in his rectory office. Count One ¶¶ 6-7. Zizka's sexual relationship with the plaintiff continued until approximately August or September 1979. Count One ¶ 10.
The complaint further alleges that Zizka was authorized by the Diocese to interact with parishioners of the Church and provide counseling services and at all time Zizka was under the direct supervision and control of the Diocese and engaged in the conduct alleged while acting in the course and scope of his duties as a priest. Count Six ¶¶ 10-11. Seventh Count ¶ 10. In approximately 1977 the Diocese was informed that Zizka had been involved inappropriately with a minor female and failed to dismiss him, failed to notify the Church of said information. Seventh Count ¶ 12. The Seventh Count further alleges that the Diocese negligently hired Zizka, and failed to use reasonable care in supervising and training him, failed to establish a policy for reporting and pursuing members of the clergy who engaged in sexual misconduct with minors, and failed to warn the plaintiff and her family that Zizka was a danger to minor females. Id.
The Eighth Count alleges that the Diocese is engaged in the commerce or trade of offering and selling the service of religious sacraments. The decision to retain Zizka was made in the course of the trade and business of the Diocese. That decision by the Diocese constitutes an unfair and deceptive act and practice. ¶¶ 12-13. The Ninth Count alleges that the Church was negligent in that it should have realized that Zizka was spending an inordinate amount of time with the plaintiff in CT Page 2788 the rectory and outside the rectory on church grounds, which should have prompted further inquiry into the relationship between the two and in that it failed to warn the plaintiff and provide notification to her parents that Zizka was spending an inordinate amount of time with their teenage daughter. ¶ 11.
Discussion of the Law and Ruling
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book 152; Ferryman v. Groton,212 Conn. 138, 142, 561 A.2d 432 (1989); Mingachos v. CBS, Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348,576 A.2d 149 (1990); Blancato v. Feldspar Corp., 203 Conn. 34,36, 522 A.2d 1235 (1987).
Under the doctrine of respondeat superior, a master is liable for the wilful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business. Cardona v. Valentin, 160 Conn. 18, 22, 273 A.2d 697
(1970); Antinozzi v. A. Vincent Pepe Co., 117 Conn. 11, 13,166 A. 392 (1933); Son v. Hartford Ice Cream Co., 102 Conn. 696, 699,129 A. 778 (1925) Larsen Chelsey Realty Co. v. Larsen,232 Conn. 480, 500, 656 A.2d 1009 (1995). But it must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply. Mitchell v.Resto, 157 Conn. 258, 262, 253 A.2d 25 (1968); A-G Foods, Inc. v.Pepperidge Farm, Inc., 216 Conn. 200, 208, 579 A.2d 69.
"While a servant may be acting within the scope of his employment when his conduct is `negligent, disobedient and unfaithful'; Butler v. Hyperion Theatre Co., 100 Conn. 551, 554,124 A. 220 (1924), quoting Loomis v. Hollister, 75 Conn. 718, 723,55 A. 561 (1903); that does not end the inquiry. Rather, `the vital inquiry in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business . . . .' Butler v. HyperionTheatre Co., supra, 556." A-G Foods, Inc. v. Pepperidge Farm,Inc., 216 Conn. 200, 210, 579 A.2d 69 208. Unless the employee is actuated at least in part "`by a purpose to serve a principal, the principal is not liable.' Meyers v. National DetectiveAgency, Inc., 281 A.2d 435, 437 (D.C.C.A. 1971), quoting M.J.CT Page 2789Uline Co. v. Cashdan, 84 U.S.App.D.C. 58, 59, 171 F.2d 132, 133 (1948)." International Distributing Corporation v. AmericanDistrict Telegraph Co., 569 F.2d 136, 139 (D.C. Cir. 1977).
Whether the employee was acting within the scope of his authority is often a question of fact. However, where the alleged acts of the employee are very clearly outside of the scope of his authority, the Courts of this state have considered the issue to be one of law. Brown v. Housing Authority, 23 Conn. App. 624,628, 583 A.2d 643 (1990). In Brown the plaintiff and Sam Jones, a maintenance mechanic employed by the defendant, were involved in an altercation which began when the plaintiff asked Jones, who was driving a van owned by the defendant, to move his vehicle, which was blocking traffic. The two men exchanged words. When Jones refused to move the van, the plaintiff drove around it. Jones followed the plaintiff in the van, rear-ending the plaintiff's car several times. The plaintiff stopped his car and got out to speak with Jones. Jones also exited his vehicle, grabbed a hammer, chased the plaintiff around the car and struck him on the chest with the hammer, seriously injuring the plaintiff. In affirming a summary judgment in favor of the defendant employer, the Court said:
 It is clear in the present case that Jones was not furthering the defendant's business interests when he assaulted the plaintiff. His intentional, criminal acts were in no way connected to the defendant's business. The mere fact that Jones was driving from one job site to another when the assault took place does not change this analysis. "`In the course of his employment' means while engaged in the service of the master, and it is not synonymous with the phrase `during the period covered by his employment.'" Levitz v. Jewish Home for the Aged, Inc., 156 Conn. 193, 198, 239 A.2d 490 (1968). As there were no facts before the court from which it could conclude that Jones was furthering the defendant's interests, the defendant's nonliability under the theory of respondeat superior was properly determined as a matter of law.
23 Conn. App. at 628
Courts of this state have held as a matter of law that when the tortfeasor-employee's activity with the alleged victim became sexual, the employee abandoned and ceased to further the employer's business. Gutierrez v. Thorne, 13 Conn. App. 493,537 A.2d 527 (1988); Nutt v. Norwich Roman Catholic Diocese, 921 CT Page2790 F. Sup. 66 (D.Conn. 1995); Maule v. Sullivan, Hartford/New Britain J.D. at Hartford, No. CV-92-0517623S (Wagner, J.), 1993 Conn. Super. LEXIS 1994.
In Nutt the court stated:
 [T]he laws and standards of the Roman Catholic Church expressly prohibit priests from engaging in any sexual activity of any kind. Thus, even if [priest] engaged in sexually abusive conduct, he did so only after abandoning the church's tenets and his personal commitment to celibacy. Sexually abusive conduct amounts to the abandonment of the Church's business. As a matter of law, therefore, the alleged sexual abuse, even if true, cannot be said to further the defendants' business and, therefore, is outside of the scope of employment.
921 F. Supp. at 71.
At oral argument the plaintiff cited the case of Mullen v.Horton, 46 Conn. App. 759, ___ A.2d ___ (1997) in which Horton, who was a priest as well as a psychologist, provided the plaintiff with a combination of pastoral, spiritual and psychological counseling while employed by the defendant Missionary Oblates of Mary Immaculate, Inc. After the counseling commenced Horton and the plaintiff began a sexual relationship, with sexual contact taking place during the counseling sessions. The plaintiff sued the Missionary Oblates and the Franco-American Oblate Fathers, Inc., claiming that they were vicariously liable for Horton's action under the doctrine of respondeat superior and the doctrine of apparent authority.
The trial court granted the Motion for Summary Judgment filed by the Oblate defendants. On appeal those defendants argued that they could not be liable under the doctrine of respondeat superior "because the laws of the Roman Catholic Church and the rules of the Oblate Order expressly prohibit priests from engaging in sexual activity, Horton's alleged sexual exploitation of the plaintiff could not be within Horton's scope of employment, nor could it be viewed as a furtherance of the Oblate institutional defendants' business." 46 Conn. App. at 762-763. However, the Appellate Court disagreed, reversed the Motion for Summary Judgment and stated:
Horton's alleged sexual exploitation of the plaintiff CT Page 2791 occurred during his church sanctioned pastoral-psychological counseling sessions and while he staffed church retreats. Thus, a trier of fact could reasonably determine that Horton's sexual relationship with the plaintiff was a misguided attempt at pastoral-psychological counseling, or even an unauthorized, unethical, tortious method of pastoral counseling, but not an abandonment of church business.
46 Conn. App. at 765-766.
The facts of this case are readily distinguishable from those of Horton because the plaintiff here was a child of 13, not an adult, and Zizka was not a psychologist. In Horton the priest did not engage in any criminal act. In this case the alleged conduct of Zizka with respect to the minor plaintiff constituted criminal conduct.[1]
The plaintiff argues that the Diocese may also be vicariously liable under the doctrine of apparent authority. Under that doctrine a principal may be held liable for an obligation incurred by an agent even if the principal has not expressly authorized the agent to incur the obligation if "the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority . . . ." Quint v.O'Connell, 89 Conn. 353, 357 (1915).
"`Apparent authority must be derived not from the acts of the agent but from the acts of his principal. [T]he acts of the principal must be such that (1) the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority, and (2) in consequence thereof the person dealing with the agent, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority.' (Internal quotation marks omitted.) Lettieri v. American SavingsBank, 182 Conn. 1, 8, 437 A.2d 822 (1980); see also Beckensteinv. Potter Carrier, Inc., supra, 191 Conn. 140; Fireman's FundIndemnity Co. v. Longshore Beach Country Club, Inc.,127 Conn. 493, 497, 18 A.2d 347 (1941); 1 Restatement (Second), supra, § 8, pp. 30-32." Hallas v. Boehmke and Dobosz, Inc., 239 Conn. 658,674, 675, 686 A.2d 491 (1997).
Applying the doctrine of apparent authority in this case, the plaintiff must plead and prove that the Diocese led the plaintiff CT Page 2792 to a good faith belief that Zizka was authorized by the Diocese to engage in sexual conduct with her. Thus it is not surprising that the Court in Mullen v. Horton, supra, stated that the doctrine of apparent authority had never been applied to establish vicarious liability for tortious conduct and declined to apply it in such a manner. 46 Conn. App. at 772.
For the foregoing reasons, the Motion to Strike the Sixth Count is granted.
The Diocese seeks to strike the Seventh Count and Ninth Count on the grounds that the First Amendment to the United States Constitution forbids this court from intruding into areas of religion. The Free Exercise Clause of the United States Constitution does not "relieve an individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs." Minersville School Dist. Bd. of Ed. v.Gobitis, 310 U.S. 586, 594-95, 60 S.Ct. 1010, 1013, 84 L.Ed. 1375
(1940). "The common law doctrine of negligence does not intrude upon the free exercise of religion, as it does not `discriminate against [a]religious belief or regulate or prohibit conduct because it is undertaken for religious reasons." Nutt v. NorwichRoman Catholic Diocese, 921 F. Sup. 66, 74 (D.Conn. 1995) (quoting Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,508 U.S. 520, 532, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). The Court in Nutt stated:
 [It] is difficult to see how the plaintiffs claims against the defendants would foster excessive entanglement with religion. The common law doctrine of negligence does not intrude upon the free exercise of religion, as it does not discriminate against a religious belief or regulate or prohibit conduct because it is undertaken for religious reasons . . . The court's determination of an action against the defendants based upon their alleged negligent supervision of [a priest] would not prejudice or impose upon any of the religious tenets or practices of Catholicism. Rather, such a determination would involve an examination of the defendants' possible role in allowing one of its [employees] to engage in conduct which they, as employers, as well as society in general[,] expressly prohibit. Since the Supreme Court has consistently failed to allow the Free Exercise Clause to relieve [an] individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs, the defendants [cannot] appropriately implicate the First Amendment as a defense to their alleged negligent conduct. CT Page 2793
Id. at 74. The Free Exercise Clause might well prohibit this court from interfering in the manner in which the Diocese supervised a priest's performance of Mass, or confession, but it certainly cannot prohibit this court from determining whether the Diocese should be liable for negligently allowing its employees to engage in criminal conduct.
For the foregoing reasons the Motion to Strike the Seventh and Ninth Counts is denied.
The Diocese and the Church have also moved to strike the Eighth Count of the complaint, which purports to state a claim under the Connecticut Unfair Trade Practices Act, § 42-110aet seq. ("CUTPA"). Section 42-110b (a), states that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Trade or commerce, in turn, is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state" Connecticut General Statutes § 42-110a (4). In determining whether conduct constitutes an unfair trade practice the Courts of this state have adopted the criteria set out in the "cigarette rule" by the federal trade commission for determining when a practice is unfair: "`(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causessubstantial injury to consumers [(competitors or otherbusinessmen)].' Conaway v. Prestia, supra, 492-93, quoting FTC v.Sperry Hutchinson Co., 405 U.S. 233, 244-45 n. 5, 92 S.Ct. 898,31 L.Ed.2d 170 (1972)." McLaughlin Ford, Inc. v. Ford Motor Co.,192 Conn. 558, 567-568, 473 A.2d 1185 (1984). (Emphasis added).
The CUTPA claim here is based on the allegation that the defendants engaged in the trade or commerce of providing religion. CUTPA was intended to redress wrongs which occurred in the context of business or commerce. The work of the defendant Church and Diocese did not constitute business or commerce. For the foregoing reason, the Motion to Strike the Eighth Count is CT Page 2794 granted.
By the court,
Aurigemma, J